**Myrtle V. CLEVENGER, Plaintiff,**

v.

**Caspar W. WEINBERGER, Secretary, United States Department of Health, Education and Welfare, Defendant.**

**No. 73CV357-W-2.**

United States District Court,
W. D. Missouri, W. D.

April 22, 1974.

Arthur M. Mellott, Kansas City, Mo., for plaintiff.

Sheryle L. Randol, Asst. U. S. Atty., Jeffery L. Alena, HEW Counsel, Kansas City, Mo., for defendant.

## MEMORANDUM OF DECISION

COLLINSON, District Judge.

■ This is a review of the Secretary's final decision denying the plaintiff's application for old-age insurance benefits under 42 U.S.C. § 402(a) (1970). Review is authorized by 42 U. S.C. § 405(g) (1970). The parties have filed cross motions for summary judgment. Since only issues of law are presented by the complaint for review, this action is in a proper posture for judgment. Beane v. Richardson, 457 F. 2d 758 (9th Cir.), cert. denied, 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105 (1972).

On December 30, 1971, the plaintiff filed an application for old-age insurance benefits under 42 U.S.C. § 402(a) (1970). The application was denied after consideration and reconsideration by the Social Security Administration of the Department of Health, Education and Welfare. On August 9, 1972, a hearing was held on the plaintiff's application. The plaintiff and her husband, Oral Clevenger, testified; a number of exhibits were introduced in evidence. On December 8, 1972, the administrative law judge rendered a written decision unfavorable to the plaintiff. The administrative law judge concluded that the plaintiff was not entitled to old-age insurance benefits because she did not have the 21 "quarters of coverage needed by her to qualify as a "fully insured individual." This conclusion was based on the finding that the plaintiff's farm income for the years 1968, 1969, and 1970 was not derived from a "trade or business" and, therefore, was not "self-employment income." On April 3, 1973, the Appeals Council affirmed the administrative law judge's decision. This affirmance constitutes the final decision of the Secretary for purposes of review under 42 U.S.C. § 405(g) (1970).

To qualify for old-age insurance benefits under 42 U.S.C. § 402(a) (1970), an individual must be a "fully insured individual" within the meaning of 42 U.S.C. § 414(a) (1970). Subsection 414(a) provides:

The term "fully insured individual" means any individual who had not less than—

(1) one quarter of coverage (whenever acquired) for each calendar year elapsing after 1950 (or, if later, the year in which he attained age 21) and before—

(A) in the case of a woman, the year in which she died or (if earlier) the year in which she attained age 62. . . .

See also 20 C.F.R. § 404.19(a)(1)(i) (1973). Since the plaintiff attained age 62 in 1972, she needs 21 "quarters of coverage," *i. e.* one quarter for each of the years 1950 through 1971.

The term "quarter" means a period of three calendar months ending on March 31, June 30, September 30, or December 31. 42 U.S.C. § 413(a)(1) (1970). The term "quarter of coverage" means a quarter in which the individual has been paid $50 or more in wages or for which he has been credited under 42 U.S.C. § 412 (1970) with $100 or more of "self-employment income." 42 U.S.C. § 413(a)(2) (Supp. I, 1971); 20 C.F.R. § 404.103 (1973).

The term "self-employment income" means the "net earnings from self-employment" derived by an individual during any taxable year after 1950 if the net earnings are at least $400. 42 U.S.C. § 411(b) (Supp. I, 1971); 20 C.F.R. § 404.1068 (1973). The term "net earnings from self-employment" is defined by 42 U.S.C. § 411(a) (1970):

The term "net earnings from self-employment" means the gross income, as computed under [26 U.S.C. §§ 1–1552 (1970)], derived by an individual from any trade or business carried on by such individual, less the deductions allowed under such chapter which are attributable to such trade or business, plus his distributive share (whether or not distributed) of the ordinary net income or loss, as computed under [26 U.S.C. §§ 701–708 (1970)], from any trade or business carried on by a partnership of which he is a member; . . . .

See also 20 C.F.R. § 404.1050 et seq. (1973); 26 U.S.C. § 7852(e) (1970).

The term "trade or business" has the same meaning as when used in 26 U.S.C. § 162 (1970). 42 U.S.C. § 411(c) (1970); see also 20 C.F.R. § 404.-1070(a) (1973); 26 U.S.C. § 7852(e) (1970).

Most of the facts are not disputed. The plaintiff was born February 5, 1910. She retired from federal civil service in 1970. Her husband has been a Field Agent with the Internal Revenue Service since 1947. The Clevengers have been married over forty years.

Although the Clevengers owned horses prior to 1945, in that year they purchased their first registered American saddle horses. Until 1948, the Clevengers boarded their horses at the plaintiff's father's farm in Ray County, Missouri. In 1948, the Clevengers purchased a six-acre farm near Lee's Summit, Missouri. The farm was purchased and is held in tenancy by the entirety. The Clevengers maintain a house and two barns on the farm. They call their farm "Beau Way Stable." They have lived on the farm since the year of purchase. Since 1948, the Clevengers have purchased, sold, and trained registered American saddle horses on their farm. Since 1955, they have boarded and trained such horses for other people on a fee basis. From 1968 through 1970, they boarded and trained two horses only which they did not wholly own. The Clevengers did have a 50 per cent ownership interest in these two horses. They charged $70 a month for boarding and training each horse. The Clevengers show their horses in Kansas, Missouri, and Iowa.

The farm has been operated as a partnership with an oral partnership agreement. The Clevengers share equally in

the profits, losses, expenses, and decisions. They do all the work on the farm. The principle operation of the farm is the boarding and training of registered American saddle horses. The Clevengers, however, do buy two or three feeder calves every year. They never have more than three and normally have only two calves. The calves are raised only for slaughter purposes. The Clevengers have three to five customers to whom they sell beef every year. They save a half beef for themselves. They raise no crops and have no other livestock or poultry.

The farm has never realized a taxable profit. In the years 1966 through 1970, gross profits of $22,195.94 from the operation of the farm were reported by the Clevengers on their federal income tax returns. Total deductions for this period also amounted to $22,195.94.

In 1966, the Clevengers reported gross profits from the farm in the amount of $3,755.81. Of this amount, $1,575 was realized from boarding and training horses, $250 from the sale of one calf, $1,353.31 from inventory appreciation, and $577.50 from "premiums." Total deductions also amounted to $3,755.81. There was no net profit or loss.

In 1967, the Clevengers reported gross profits from the farm in the amount of $3,916.51. Of this amount, $1,095 was realized from boarding and training horses, $2,524.26 from inventory appreciation, and $297.25 from "premiums." Two feeder calves were purchased for $137. There were no reported sales of horses or cattle. Total deductions also amounted to $3,916.51. There was no net profit or loss.

In 1968, the Clevengers reported gross profits from the farm in the amount of $4,039.01. Of this amount, $479 was realized from boarding horses and "premiums," $68.22 from "interest," $1,920 from the sale of one horse and an unstated number of calves, and $1,571.79 from inventory appreciation. The calves were sold for $420 and the horse for $1,500. During that year an unstated number of calves were purchased for $145. Total deductions also amounted to $4,039.01. There was no net profit or loss.

In 1969, the Clevengers reported gross profits from the farm in the amount of $5,121.09. Of this amount, $1,745 was realized from boarding horses and "show premiums," $66.31 from "interest," $501.76 from the sale of an unstated number of calves, and $2,808.02 from inventory appreciation. During the year, one horse was purchased for $175 and no horses were sold; an unstated number of calves were purchased for $262.-50. Total deductions also amounted to $5,121.09. There was no net profit or loss.

In 1970, the Clevengers reported gross profits from the farm in the amount of $5,363.52. Of this amount, $651.75 was realized from boarding horses and "show premiums," $2,075.50 from the sale of two horses and an unstated number of calves, and $2,636.27 from inventory appreciation. The horses were sold for a total of $1,352.50 and the calves for $713. There were no purchases of horses or calves. Total deductions also amounted to $5,363.52. There was no net profit or loss.

In summary, from 1966 through 1970 the Clevengers purchased three horses and sold three horses. The horses were sold for a gross profit of $2,852.50, or 13 per cent of the gross profit from the farm during those years. They sold an unknown number of calves for a gross profit of $1,176.76, or 5 per cent of the gross profit from the farm during those years. They realized gross profit of $6,420.50 from boarding and training horses and show premiums, or 29 per cent of the gross profit from the farm during those years. Inventory appreciation accounted for $10,893.65, or 49 per cent of the gross profit from the farm during those years.

In each of the years 1968, 1969, and 1970, the plaintiff reported $1,600 in farm income (under the optional method) for purposes of computing Social Security self-employment tax. In those three years, the plaintiff paid a total of

$321.20 in self-employment tax and acquired 12 "quarters of coverage," which gave her a total of 26 "quarters of coverage." Self-employment income was reported in those years for the express and legitimate purpose of acquiring sufficient "quarters of coverage" for the plaintiff to qualify as a "fully insured individual." Mr. Clevenger reported self-employment income from the farm in 1961 and 1963. Neither the plaintiff nor Mr. Clevenger reported self-employment income from the farm in any other year.

■ The issue presented by the complaint for review is whether the record of the administrative hearing reflects substantial evidence to support the administrative law judge's finding that the farm income reported as self-employment income in 1968, 1969, and 1970 was derived from an enterprise other than a "trade or business." Substantial evidence within the meaning of 42 U.S. C. § 405(g) (1970) is more than a scintilla; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971).

■ In order to be a "trade or business" within the meaning of 42 U.S.C. § 411(a) and (c) (1970) and 26 U.S.C. § 162 (1970), an enterprise must be profit-motivated, Five Lakes Outing Club v. United States, 468 F.2d 443 (8th Cir. 1972), and that motive must be the principal or dominant motive for the enterprise, Carkhuff v. Commissioner, 425 F. 2d 1400 (6th Cir. 1970); Godfrey v. Commissioner, 335 F.2d 82 (6th Cir. 1964), cert. denied, 379 U.S. 966, 85 S. Ct. 660, 13 L.Ed.2d 560 (1965); Hirsch v. Commissioner, 315 F.2d 731 (9th Cir. 1963).

■ The record of the administrative hearing reflects substantial evidence to support the finding that the Clevenger's farm was not operated as a "trade or business." The principal or dominant motive for the operation of the farm was the training and showing of registered American saddle horses as a hobby. The Clevengers were profit-motivated in operating their farm, but it was a secondary motivation. For 22 years, the Clevengers sought only enough profit to break-even on the farm. In short, the Clevengers wanted and made profits, but they did not want nor did they make any more profits than necessary to finance their hobby at the level of no net profits and no net losses.

This Court wishes to emphasize that there is nothing in the record to indicate that the Clevengers intended to abuse the Social Security system. It is evident to the Court that Mrs. Clevenger's application for old-age insurance benefits was made honestly and in good faith.

For the reasons stated, the Secretary's motion for summary judgment will be granted and the plaintiff's motion for summary judgment will be denied.