ALAN BRUCE MAXWELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Maxwell v. Commissioner
Docket No. 1851-80.
United States Tax Court
T.C. Memo 1982-405; 1982 Tax Ct. Memo LEXIS 348; 44 T.C.M. (CCH) 504; T.C.M. (RIA) 82405; July 19, 1982. *348 During the years at issue, petitioner claimed deductions for expenses incurred incident to his research in shrimp and fish culture. Held, petitioner lacked an actual and honest profit objective and therefore the research expenses are not deductible under either sec. 162, sec. 212, or sec. 174, I.R.C. 1954. Alan Bruce Maxwell, pro se. Marion L. Westen, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: *349 By statutory notice dated December 7, 1979 respondent determined deficiencies in petitioner's Federal income taxes for the taxable years 1974 through 1977 in the amounts of $2,311.99, $2,113.75, $1,904, and $2,242.40, respectively. After various concessions, the sole issue for decision is whether certain research expenses incurred by petitioner during the taxable years at issue are deductible pursuant to section 162, I.R.C. 1954, as ordinary and necessary expenses incurred in a trade or business. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner Alan Bruce Maxwell resided in Tavernier, Florida at the time of filing the petition herein. He filed individual Federal income tax returns for the taxable years 1974 through 1977 with the Office of the Director, Internal Revenue Service. Petitioner graduated from Stetson University in 1952 with a Bachelor of Arts degree with a major study in biology. For the next few years he engaged in various activities of a non-teaching nature and then in 1960 began a teaching career. In 1962 he was awarded *350 a scholarship to the University of Virginia (the University) in order to develop a course for high school biology students known as "BSCS." After receiving a Master's degree in science education from the University, petitioner taught at Eastern Kentucky State College for one year and then moved to south Florida. In 1965 he became an instructor in the biology department at Palm Beach Junior College. As such, his primary responsibility was the teaching of freshman courses in biology and zoology. In 1972, petitioner received a scholarship from the National Science Foundation and the Nuclear Regulatory Agency for a year of advanced study at Cornell University. He was admitted to the department of veterinary medicine as a graduate student. His particular course of study dealt with environmental and radiation biology, and his research work was in reproductive physiology with special emphasis upon the effect of radiation exposure on reproductive processes. As a result of his study, petitioner developed a strong interest in reproductive physiology and in environmental biology. He returned to Palm Beach Junior College to resume his position as instructor in the biology department. *351 He was appointed to an assistant professorship in the biology department in 1977. In the fall of 1971 petitioner and several of his associates organized Technibios, Inc. (hereinafter Technibios), a Florida non-profit corporation, for the purpose of seeking funds for research in fish and shrimp culture. In 1974 petitioner acquired some wealth by inheritance and decided to pursue actively such research on his own. At that time petitioner opened a bank account in the name of Technibios. Petitioner's research was directed toward the development of a new food source. Ocean Farming Systems, Inc. (hereinafter OFS) entered into a "courtesy agreement" with petitioner to allow him to use their fish-holding tanks and their microscope located at Plantation Key, Florida. OFS was conducting culture work with various algae, shrimp and fishes. Petitioner and OFS conferred on occasion with respect to their activities. During this period petitioner successfully spawned three different species of marine fish. Petitioner kept no specific records with respect to these developments and no publications arose therefrom. It is impossible to patent the techniques involved in spawning larvae out *352 of fish. Thus, the development of his activities into a commercially viable business was not in petitioner's immediate foreseeable plans. During the years 1974 through 1977, petitioner taught principles of biology, general zoology, anatomy and physiology at Palm Beach Junior College. He also taught principles of biology at Florida Atlantic University during 1974 through 1976 and a course in environmental conservation at that university during 1977. During the years in issue, petitioner reported income in the following amounts: 1974
1975
1976
1977
Palm Beach Junior College
$18,777.80
$17,161.25
$17,105.91
$17,575.29
State of Florida
1,250.00
Ocean Farming Systems, Inc.
781.55
Total
$20,027.80
$17,161.25
$17,105.91
$18,356.84
The $781.55 was received by petitioner for some fish that he collected for Ocean Farming Systems as a diver. At issue for the taxable years 1974 through 1977 are research deductions totaling $3,861.23, $7,384.56, $7,718.56 and $8,606.17, respectively. The 1974 total consists of $491.45 for "Research-Use of Home" ($184.84 X.33-1/3, telephone; $270.04 X.33-1/3, electricity; $119.51 X.33-1/3, water, sewage *353 and garbage; and $900 X.33-1/3, depreciation on house); $2,511.36 for "Research Expense" ($791.22, travel; $500.23, auto mileage; [1] $279, contract hire; $70, diving instruction; and $870.91, miscellaneous expenditures); and $858.42 for depreciation ($300.00, dive boat depreciation; and $558.42, 1974 capital expenditures). The 1975 total consists of $645.85 for "Research-Use of Home" ($360.85 X.33-1/3, telephone; $509.02 X.33-1/3, electricity; $167.69 X.33-1/3, water; and $900 X.33-1/3, depreciation on house); $4,324.67 for "Research Expense" ($1,080, travel; $2,417.57, expenses; [2] $629.10, auto mileage; and $198, contract hire); and $2,414.04 for depreciation ($300, dive boat depreciation; $670.07, 1974 capital expenditures; $1,118.37, 35' diesel powered sailing yawl; and $325.60, 1975 capital expenditures). The 1976 total consists of $5,112.62 for "Research Expense" ($260, contract hire; $381.60, phone service; $59.88, motels and meals; $1,168.30, auto mileage; $3,242.84, expenses [3]); and $2,605.94 for depreciation ($300, dive boat depreciation; $446.71, 1974 capital expenditures; $1,429.39, 35' yawl; and $429.84, 1975 capital expenditures). The 1977 total consists of $6,755.23 *354 for "Research expense" ($326.95, contract hire; $392.68, phone service; $2,162.40, travel including 31 round trips from Boynton Beach to Islamorada, turnpike tolls and meals; and $3,873.20, expenses [4] ); and $1,850.94 for depreciation ($1,129.22, 35' yawl; $221.44, 1975 capital expenditures; and $500.28, 1977 capital expenditures). A number of these expenses were paid with funds drawn from the Technibios bank account. *355 Respondent disallowed deductions for all above expenses on the ground that such expenses did not represent ordinary and necessary expenses incurred in petitioner's trade or business. OPINION Petitioner contends that he is entitled to deduct expenses incident to his research during the years in question. Respondent argues that such expenses are nondeductible personal expenses. We find ourselves in agreement with respondent. In order for a taxpayer to be entitled to deductions under either section 162 or section 212, he must have an actual and honest profit objective. Carkhuff v. Commissioner,425 F.2d 1400, 1404 (6th Cir. 1970), affg. a Memorandum Opinion of this Court; Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967), cert. denied 389 U.S. 931 (1967). Petitioner has the burden of proving his entitlement to deductions under both section 162 and section 212. Benz v. Commissioner,63 T.C. 375, 382 (1974). Although petitioner's testimony was exceptionally candid and well presented, we nevertheless sustain respondent's determination that the research expenses *356 in question are not deductible. Petitioner has failed to establish that his research was undertaken with a view to generating income. On the contrary, it was clear from petitioner's testimony that petitioner's research activities would not be a "commercially viable business * * * in the immedite foreseeable future." Much of petitioner's activities were performed for and financed with the funds of Technibios, a non-profit organization set up by petitioner. The only income petitioner derived from his diving and research activities during the years in question was received in exchange for certain fish petiioner collected for Ocean Farming Systems. This income was merely incidental to petitioner's ongoing activities and is not sufficient to convert those activities into the type that would give rise to deductions under section 162 or section 212. [5]
Petitioner's research expenditures are not deductible as teaching expenses. There is no evidence that his research was required by petitioner's employers or that petitioner received any compensation for *357 such research. Additionally, petitioner has made no attempt to have his research published. We agree with respondent's contention that the evidence presented failed to show sufficient correlation between petitioner's research in shrimp and fish culture with a view to the development of a new food source and his teaching of general freshman courses in biology, zoology, anatomy, physiology, and environmental conservation. [6] Accordingly, we must deny the claimed expenditures for the year in question. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Auto mileage was computed as follows: ↩
$294.07
Total gas tickets
/.54
Estimated price per gallon
544.57
Estimated gallons purchased
X 12
Estimated miles per gallon
6,534.84
Estimated total miles travelled
-3,200.00
Estimated personal mileage
3,334.84
X.15
per mile
$500.23
2. Expenses claimed were as follows: ↩
Hypoluxo Marine
(Dockage and Hauling)
$427.26
Keys Marina -- Dockage
546.00
Insurance on Vessel
281.00
Boat tags and tax
64.00
Spencer Marine -- Dockage
73.48
Dive Boat Fuel
78.09
Atlantic Hardware
82.70
Miscellaneous
865.04
Total
$2,417.57
3. Expenses claimed were as follows: ↩
Keys Marina, Inc. (Dockage)
$1,123.20
Insurance (Boat)
329.00
Dive Boat Fuel
211.64
Miscellaneous Expenses
1,579.00
Total
$3,242.84
4. Expenses claimed were as follows: ↩
Keys Marina, Inc. (Dockage)
$ 982.80
Boat Insurance
435.00
Dive boat fuel
107.00
Atlantic hardware
392.44
Morrelle Marine, Inc.
(yard service)
249.43
Ace Hardware (miscellaneous
materials for boat
maintenance)
181.36
Miscellaneous expenses
1,525.17
Total
$3,873.20
5. See Asta v. Commissioner,T.C. Memo. 1976-109; Cherry v. Commissioner,T.C. Memo. 1967-123↩.
6. Petitioner made no argument that his expenditures were deductible under sec. 174. To be deductible, such expenses must be paid or incurred in a trade or business. Even though the trade or business requirement under sec. 174 is not as narrowly construed as that of sec. 162, Snow v. Commissioner,416 U.S. 500, 502-503 (1974), we still find that the contested expenditures were not sufficiently related to any trade or business. See Asta v. Commissioner,T.C. Memo. 1976-109↩.