HOBSON MOTOR COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hobson Motor Co. v. Commissioner
Docket No. 23420-88
United States Tax Court
T.C. Memo 1990-297; 1990 Tax Ct. Memo LEXIS 315; 59 T.C.M. (CCH) 884; T.C.M. (RIA) 90297; June 18, 1990, Filed *315 Decision will be entered for the respondent. Walter M. Ebel, III, for the petitioner. Amy Dyar Seals, Richard J. Neubauer, and Nancy W. Hale for the respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax Year Ending
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
March 31, 1984
$ 27,803.53
$ 1,390.18
*
March 31, 1985
13,813.80
690.69
*
The issues for decision are: (1) whether petitioner is entitled to depreciation deductions in the amounts of $ 30,913.57, and $ 30,030.00 for the years ending March 31, 1984, and March 31, 1985, respectively; (2) whether petitioner is entitled to an investment tax credit in the amount of $ 14,000 for the year ending March 31, 1984; and (3) whether petitioner is liable for the additions to tax for negligence or intentional disregard of rules or regulations pursuant to sections 6653(a)(1) and *316 (a)(2). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits are incorporated herein by this reference. Petitioner was an Arkansas corporation with its principal place of business in Hot Springs, Arkansas, at the time it filed its petition. The corporation engaged in the business of selling new and used cars, and was an authorized Honda and Subaru new car dealer. James P. Geurin was the president of petitioner and owned 51 percent of the outstanding shares. Marilyn Geurin, James' wife, served as petitioner's secretary-treasurer and owned the remaining 49 percent of the shares. In 1977 petitioner purchased a 1978 Vogue motor coach for $ 38,070, and in 1984 petitioner purchased a used 1983 Bluebird motor coach for $ 145,000. No formal records were kept as to the business and personal use of the motor coaches. In 1986 the Geurins prepared a noncontemporaneous log of the motor coaches' use after being advised by their accountant to do so. The log stated that the following trips were made with the Vogue motor coach: Vogue Log April 1983 Mileage on Speedometer 9800 appx. 1. May 1, 1983 - 280 miles Took Bill and Carol to the *317 Red Apple Inn - Trying to work out retail financing for Tigue Brothers. Check with Red River Honda, Heber Springs [Arkansas]. No luck. 3. June 22-23, 1983 - 475 miles Texarkana, Atlanta, Sulpher Springs [Arkansas], Used car buying trip. Also Texarkana auto auction. 4. August 1983 - 430 miles Honda meeting in Little Rock [Arkansas] for dealer council. Went on to Memphis [Tennessee] for bid on lease cars. 5. October 1983 - 750 miles Went to Shreveport and Baton Rouge [Louisiana]. Try to repossess motorcycle from Danny French. Had no luck. 6. November 9-10, 1983 - 620 miles Honda Zone meeting Dallas [Texas]. Talked about more allocation (of cars) to Felty. Discussing if build new building, change of percentage of ownership to 50 50 [sic]. 7. March 8, 1984 - 130 miles Jacksonville [Arkansas]- Have repair work done to Generator. Could not find problem. Mileage 83-84 - approximately 3200. The parties stipulated that in 1983 the Vogue motor coach was used a total of 4,395 miles of which 1,700 were for personal purposes. On petitioner's tax return for the year ending March 31, 1984, petitioner claimed depreciation totalling $ 5,438.57 which represented 61.3 percent of the total *318 depreciation (i.e., (4395 total miles - 1700 personal miles)/4395 total miles = 61.3%)). Of the trips listed on the log only four involved overnight stays. Furthermore, the October trip to Baton Rouge, Louisiana, was to visit friends who owned a Honda dealership. Marilyn Geurin accompanied James Geurin on all but the November trip to Dallas, Texas. After petitioner purchased the Bluebird motor coach, the Vogue motor coach was not used, and was subsequently sold for $ 35,000. The log stated that the following trips were made with the Bluebird motor coach: March 27 - 1984 Bluebird Mileage 4500 1. March 27, 1984 - 75 miles Picked up Bluebird from Al Hopkins in Russellville [Arkansas]. Will not take in Vogue for enough money. 2. March 29, 1984 - 410 miles Went to Russell Chevrolet-Honda to see new showroom. Then to Jonesboro to University Motors. Have not decided what to do. April 1, 1984 New Business Year 3. April 5, 1984 - 65 miles Took motor home to Buddy Greggs in North Little Rock [Arkansas] for complete check up and to change all fluids and filters. Coach still in warranty, has a few minor problems to correct. Approximately 65 miles. 4. April 19, 1984 - 65 miles Picked *319 coach up from Greggs at North Little Rock [Arkansas] after check up. All problems seemed to be corrected. Refrigeration on electrical still not acting right. 65 miles. 5. May 3, 1984 - 60 miles Took salesman to the Fishnet in Arkadelphia [Arkansas] to eat. Seemed to enjoy it. Approximately 60 miles. 6. May 23, 1984 Bypass surgery. Could not drive for over five months. 7. November 20, 1984 - 300 miles Trip to Fort Smith [Arkansas]. Dropped off Bill and John at Floyd Traylers to pick up two cars. Dropped off Grant [the Geurin's son] at Karate Tournament. Drove on to Poteau, Oklahoma to look and price a metal building. First trip after surgery, hurts. 8. December 10, 1984 - 130 miles Took coach to Buddy Greggs for last warranty check, North Little Rock [Arkansas]. Nothing major. 9. February 12, 1985 - 320 miles Gone to Little Rock, England, and Dumas [Arkansas] to look at building - James Whitehurst has constructed. Whitehurst Brothers got building contract on new location. 10. March 18, 1985 - 620 miles To Dallas [Texas] for Honda Zone meeting - visited with Gay and Scott [the Geurin's daughter and son-in-law]. Tried to find lost Fiat Wagon. No such address. The log *320 showed that the Bluebird motor coach was used a total of 485 miles, and 1,560 miles during the 1983 and 1984 tax years, respectively. Petitioner claimed $ 25,475 in depreciation for the year ending March 31, 1984, and a $ 14,000 investment tax credit on the Bluebird motor coach. For the year ending March 31, 1985, petitioner claimed $ 30,030 in depreciation. Of the trips taken in the Bluebird motor coach, only the March 18, 1985, trip to Dallas, Texas, involved an overnight stay. Marilyn Geurin accompanied James on four of the trips taken in the Bluebird. James Geurin was petitioner's only employee that ever drove or used the motor coaches. The motor coaches were never kept as inventory or rented out. OPINION The central issue is whether the motor coaches were used for business or personal reasons. Section 167(a) allows as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) -- (1) of property used in a trade or business, or (2) of property held for the production of income. No deduction for depreciation shall be allowed on automobiles or other vehicles used solely for pleasure. Sec. 1.167(a)-(2), Income Tax Regs; *321 see sec. 262. To depreciate an automobile, a taxpayer must establish that the automobile was used at least partially for business, and the deduction will be allowed only to the extent of business use. Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 744 (1973). International Artists, Ltd. v. Commissioner, 55 T.C. 94, 105 (1970). Petitioner's primary argument is that respondent erred in not allowing any depreciation on the motor coaches since they were used in petitioner's trade or business. Petitioner alternatively argues that depreciation is appropriate because the motor coaches were held for investment purposes. We hold that petitioner has failed to prove the motor coaches were used for business purposes. We believe the purpose of acquiring and maintaining the motor coaches was for Mr. Geurin's personal use and pleasure. Petitioner bears the burden of proving that the Commissioner's determination in the notice of deficiency is incorrect. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). The only evidence petitioner offered to verify that the motor coaches were used in its business was the log and Mr. Geurin's testimony. This evidence fails to meet petitioner's burden *322 of proof. The Geurins prepared the log after the fact and only after being advised by their accountant to do so. No evidence was presented to show that any of the trips culminated in a business transaction, or that the stated business purpose for the trip actually took place. It also seems questionable to argue that the motor coaches were used in petitioner's business when no formal records were kept on its use. Mr. Geurin did testify as to the trips taken in the motor coaches and the business reason. However, we do not find this uncorroborated self-serving testimony to be credible. Mr. Geurin testified that the motor coaches were a more economical means of business travel. However, in the two years in question only four trips involved overnight stays. Clearly, the cost of a hotel and alternative transportation would have been more economical. Additionally, it would appear that if the motor coaches were used for the business, other employees would have driven the coaches to business functions. However, the only person to ever use or drive the coaches was Mr. Geurin. In fact, when he was sick for five months the coaches sat idle. It would seem another employee would need to *323 use the coaches in Mr. Geurin's place to perform the various business functions the motor coaches were to have served. However, no such trips were made. Moreover, the presence of Mrs. Geurin and other family members on most of the trips is further evidence of the personal motive of the coaches' use. Consequently, from the evidence presented petitioner has failed to prove that the motor coaches were used for business purposes. Therefore, under section 167(a)(1) depreciation is disallowed. Petitioner alternatively argues that the motor coaches were held for the production of income and are therefore depreciable under section 167(a)(2). In proving this argument the taxpayers must demonstrate that they had a profit-seeking motive in holding the motor coaches, or that subsequent to their acquisition they were converted to property held for the production of income. Carkuff v. Commissioner, T.C. Memo. 1969-66, affd. 425 F.2d 1400, 1404 (6th Cir. 1970). Mr. Geurin testified that he acquired the motor coaches for investment purposes with the expectation of receiving a profit upon the resale. However, neither motor coach was ever offered for rent or directly resulted in any income. The *324 only direct profit Mr. Geurin testified as to making on the motor coaches was a gain on the sale. However, the Vogue coach was sold at a $ 3,000 loss and the Bluebird was not sold. Merely offering property for sale does not convert property into "property held for the production of income." May v. Commissioner, 35 T.C. 865 (1961), affd. 299 F.2d 725 (4th Cir. 1962). Therefore, petitioner has failed to prove depreciation is allowable under section 167(a)(2). The second issue is whether petitioner is entitled to an investment tax credit in the amount of $ 14,000 pursuant to section 48. Section 48(c) limits the availability of the investment tax credit under section 38 to property with respect to which depreciation * * * is allowable and having a useful life * * * of 3 years or more. Sec. 1.48-1(a)(1), Income Tax Regs. Therefore, if an asset is not depreciable because it is not used in a trade or business, or held for the production of income under section 167, then no investment tax credit will be allowed. Sec. 1.48-1, Income Tax Regs.; Gerber and Associates v. Commissioner, T.C. Memo. 1987-446. Since we have found the motor coaches are not depreciable assets under section 167(a), *325 the investment tax credit is not allowed. The last issue is whether petitioner is subject to additions to tax for the taxable years ended March 31, 1984 and 1985, pursuant to section 6653(a)(1) and (a)(2). Section 6653(a) provides that where any part of an underpayment of income tax is due to negligence or intentional disregard of rules or regulations, an amount equal to 5 percent of the underpayment shall be added to the tax. "Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967); Neely v. Commissioner, 85 T.C. 934, 947 (1985). The taxpayer bears the burden of proof. Enoch v. Commissioner, 57 T.C. 781, 802 (1972); Rule 142(a). The explanations offered by Mr. Geurin have failed to persuade us that respondent's determination of the addition to tax for negligence is in error. Mr. Geurin testified that he had been audited two or three times, and each time personal expenses had been disallowed. Therefore, he was aware that personal expenditures were not deductible. As shown above, the motor coaches were used for personal reasons, not business; therefore, *326 the depreciation was not deductible. Petitioner also justifies the deduction on its reliance on an accountant. A taxpayer may be insulated from liability for a negligence addition by a good faith reliance on professional advice. Jackson v. Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989). To be insulated, however, a taxpayer must have provided the agent with correct information, and the error must be due to the agent's mistake. Pessin v. Commissioner, 59 T.C. 473, 489 (1972). There is no indication that petitioner gave its accountant the correct information. We also do not find that there is any complex question of law involved which will justify petitioner's reliance on its accountant. Consequently, petitioner has failed to show it acted reasonably and prudently, and section 6653(a) is applicable. In light of the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedures.↩
*. 50 percent of the interest due on the deficiencies.↩