MARTIN F. WHITCOMB and ROMAINE B. WHITCOMB, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Whitcomb v. Commissioner
Docket No. 3546-72.
United States Tax Court
T.C. Memo 1976-181; 1976 Tax Ct. Memo LEXIS 218; 35 T.C.M. (CCH) 793; T.C.M. (RIA) 760181; June 9, 1976, Filed *218 Rubin Sapperstein, for the petitioners. Eli H. Schmukler, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioners' Federal income tax for the taxable year 1967 in the amount of $2,189.03. Some of the issues have been settled. The issues remaining for decision are: 1. Whether the activities of petitioners involving real property owned by them constituted a trade or business or whether petitioners held such property for the production of income so that legal fees paid with respect to such property are deductible and they are entitled to deduct depreciation with respect to such property; and, 2. Whether petitioners are entitled to the amounts of depreciation they claimed on miscellaneous personal property. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by this reference. Martin F. and Romaine B. Whitcomb, husband and wife, resided in Baltimore, Maryland when they filed their petition in this case. They filed a timely joint Federal income tax return for the taxable year 1967 with the District Director, Internal Revenue Service, Baltimore, *219 Maryland. They filed an amended Federal income tax return for 1967 with the Internal Revenue Service, Philadelphia, Pennsylvania on April 15, 1971. In 1960 petitioners began acting as manufacturer's representatives for the sale of electronic equipment under the name of Whitcomb Associates. They have actively conducted this business through the taxable year in question. During 1967 Whitcomb Associates conducted business from an office at 730 Deepdene Road, Baltimore, Maryland. The building located at this address is a two-story residential type building containing six rooms--a kitchen, two bathrooms, and a basement. The first floor is used for the storage of machinery and packing equipment. Several desks and copying machines are also housed on the first floor. The second floor is used for the storage of packing boxes. A sign bearing the name "Whitcomb Associates" is on the building. It was the only location of "Whitcomb Associates" listed in the Baltimore area telephone directory for 1967. During 1967, the petitioners used a portion of their personal residence which was located at 635 St. Johns Road, Baltimore, Maryland for the purpose of conducting Whitcomb Associates business. *220 The Log Inn Co. of Anne Arundel County, Maryland (hereinafter referred to as the Log Inn Co.), was incorporated under the laws of Maryland in December 1912 and had as its purpose the operation of a hotel, and restaurant. The Log Inn Co. operated successfully until May of 1958 when the board of directors determined that the corporation was operating at a loss and that there was no prospect for improving the conditions of the business operation in the near future. Accordingly, the board of directors unanimously voted to liquidate the corporation. Petitioners purchased the real property owned by the Log Inn Co. at an auction on December 6, 1958 for $19,500 and title was transferred to them on February 4, 1959. The building itself will be hereinafter referred to as the Log Inn and the land and building combined will be referred to as the Log Inn property. In addition to receiving the Log Inn property, petitioners also received all of the stock of the Log Inn Co. and the former shareholders agreed to hold the petitioners harmless from any liability arising from the corporation's prior activities. Immediately following the purchase of the Log Inn property, petitioners negotiated for *221 the purchase of an adjacent tract of property owned by William T. Emory, a former officer-shareholder of the Log Inn Co. Petitioners refinanced the debt on the Log Inn property and the debt on the Emory property. Upon refinancing they disclosed that they were very fortunate in soliciting one of their friends to be a corporate officer of the Log Inn Co. and that their friend and his wife had been spending much time renovating the Log Inn during the summer months. The Log Inn property fronts on Chesapeake Bay and is located near Annapolis, Maryland, approximately 1 mile from Route 50, near the location of the Bay Bridge, and approximately 28 miles from the petitioners' home in Baltimore, Maryland. The Log Inn is a modified "L" shaped structure which was originally constructed from chestnut logs. It is a rather large and rambling building and its roof is approximately 10,000 square feet in size. Prior to being modified by the taxpayers, the Log Inn had approximately 23 to 27 separate rooms. These rooms were all attached and formed a single structure which consisted of one main floor with a second story which covered the front portion of the building. The ground floor contained *222 a relatively large dining space, a kitchen and a wing with a number of individual small rooms that had been used as bedrooms when the building was being operated as a hotel. On the ground floor, along the front of the building, there were four relatively large rooms which had been used, when the building was operated as a hotel, as dining rooms for entertainment and dences. Behind these four dining rooms was a very large area, half of which was used as a kitchen and pantry. After acquiring the Log Inn petitioners installed telephones. One of the telephones was located near the kitchen. The second telephone was located in the front left corner of the first floor of the Log Inn building. A third telephone was located in a second floor room which was used by petitioners as a bedroom. These telephones were connected with telephones located in the Whitcomb Associates office in Baltimore and in petitioners' office in their home in Baltimore. The telephones installed in the Log Inn were disconnected during the colder months of the year. Shortly after acquiring the Log Inn property, petitioners started to consider various uses to which this property could be put. After serious consideration, *223 petitioners decided that they would use the structure for the operation of a high-quality restaurant. When petitioners purchased the Log Inn property, it did not have an adequate heating system. The Log Inn had no direct water supply but, instead, depended upon a well and water system located in the house adjacent to the Log Inn which was owned by the former shareholders of the Log Inn corporation. At one time the water supply to the Log Inn was cut off, and it was necessary for petitioners to haul water from Chesapeake Bay to the Log Inn. Except for certain rooms which had been vandalized, the Log Inn had electricity in each room. After petitioners acquired the Log Inn property and decided to make it a restaurant, they realized that many repairs and improvements would be required before the building could be used for that purpose. Up until that time, the building had suffered from years of neglect. At the time they acquired the Log Inn it was in need of repairs to the roof, the foundation, and the walls. Dry rot and termites damaged the structure. Petitioners believed the building to be structurally unsafe and were very concerned with whether the second floor could safely *224 handle the load which they expected to be there. Mr. Whitcomb had been a safety engineer for many years and was an expert in restaurant kitchen facilities. The kitchen equipment in the Log Inn had been there for many years and it contained an old stove which was coal or wood fired. It fell apart when petitioners attempted to remove it. The kitchen also contained a large commercial range which would have been sufficient for the operation of a restaurant. There was an adequate supply of tables, chairs, napkins and tablecloths. While the kitchen sinks were old and rusty in spots, they were perfectly safe. The refrigeration units located in the kitchen were completely unsuitable for use by a restaurant. The only refrigerator which was usable was a small apartment size refrigerator. Petitioners planned on buying a new commercial size refrigerator and other kitchen equipment for the restaurant when the restaurant was nearly ready for operation. During the year in question and prior years, petitioners and their children traveled to the Log Inn property on the weekends during warm weather. In mid-June, petitioners and their children would travel to the Log Inn to live and work there *225 throughout the summer months. When petitioners stayed overnight at the Log Inn, they usually slept in one of the small rooms located on the second floor of the building. Two more of the small rooms on the second floor were used for the children to sleep in. The remaining four bedrooms which were located on the second floor of the Log Inn were in a condition which would make them usable as bedrooms if the petitioners had so desired; however, they used them for the storage of tools and construction materials used to repair or make improvements to the building or which they anticipated using in the future. Petitioners and their two children, who were approximately ages 12 and 14 in 1967, worked together as a family in making repairs and improvements to the Log Inn. In addition, petitioners spent some time working on their Whitcomb Associates business while at the Log Inn. As part of their effort to prepare the Log Inn for operation as a restaurant, Martin F. Whitcomb, president, Raymond G. Stinchcomb, vice president, and Romaine B. Whitcomb, secretary-treasurer, corporate officers of the Log Inn Co., applied for a liquor license for the Log Inn. On April 19, 1960, the Board of *226 License Commissioners for Anne Arundel County, held a hearing on the application for a liquor license. They concluded that the Log Inn Co. would qualify for the granting of a license but that the premises needed substantial improvement in order to pass the Health Department, Fire Prevention Bureau, and County Building Department codes. They informed petitioners that a license would be granted if the structure passed inspections by these agencies. The liquor license was to be withheld until the Board received written approval from the County agencies listed above. The regulations and requirements of these agencies were never satisfied. No liquor license was ever issued to petitioners or Log Inn Co. No traders and restaurant license was ever issued to either the Log Inn Co. or to petitioners for the year 1967. No retail sales taxes were ever paid by the petitioners or by the Log Inn Co. Prior to the end of 1967, petitioners had replaced the rotten logs in the wall of the Log Inn, installed two large double doors in a dining room, and installed a large fire exit in the dining room. They had completed approximately 80% of the major repair items that they believed had to be done *227 before a restaurant could be opened. By the end of 1967 petitioners had not opened a restaurant, nor was the structure in physical condition to be used as a restaurant. They had not completed repairs to the roof of the Log Inn, nor had they purchased the refrigeration and other equipment needed to commence operation of the restaurant. For many years prior to the acquisition of the Log Inn property by the petitioners in 1959, the Log Inn Co. had rented its property for one day each year to the Magothy River Association (hereinafter the Association). After petitioners acquired the property, they were approached by a representative of the Association who expressed a desire to continue using the property for its "Annual Bull Roast." Each year since their acquisition of the property, petitioners have leased the Log Inn property to the Association for its annual bull roast, an outdoor function. Under their agreement with petitioners, the Association used the Log Inn property grounds for the one-day bull roast. The Association hired a caterer to bring in the food it desired. The caterer also supplied all of the cooking equipment and employees which were needed for the preparation and serving *228 of the food. The kitchen facilities located in the Log Inn building were to be used only in emergencies, if the caterer's cooking equipment malfunctioned. Petitioners were to provide for the erecting and storing the Association's bandstand, the arrangements for outdoor sanitary and bathroom equipment, the preparation and cleanup of the grounds, trash collection, caterer's dressing facilities, additional security beyond that supplied by the police, potable water, electricity, telephones, ladders, extra tables and chairs and miscellaneous supplies. In the early years following the petitioners' acquisition of the property from the Log Inn Co., the agreement with petitioners called for the Association's being able to use the interior of the Log Inn building if the weather became inclement. However, in later years, including 1967, the attendance at the bull roast exceeded a thousand people and was so large that it was impractical to use the Log Inn building even in inclement weather. Therefore the Association arranged for their caterer to bring a tent which could be used in the event of inclement weather. The insurance covering the Log Inn property when it was being used by the Association *229 for the bull roast was effective on a daily basis upon the notification of the insurance company. This insurance policy was owned by the Association, not the Log Inn Co. or petitioners. The gross receipts from the bull roast for the year 1967 were $275. All of the income received and expenses incurred in connection with the bull roast were reported on the U.S. Corporation Income Tax Return filed by the Log Inn Co. for the taxable year 1967. None of the income from the bull roast was reported on either the original or amended U.S. Income Tax Return filed by the petitioners for the calendar year 1967. Petitioners reported no income or expenses from transactions during the taxable year 1967 from renting the Log Inn or any of its surrounding property to either the Log Inn Co., the Association, or to any other organization or individual. Although petitioners were approached by several people who desired to rent the Log Inn or land in 1967, petitioners chose not to rent the property. The only function which was held on the Log Inn property was the annual bull roast of the Association. Sometimes people who dealt with Whitcomb Associates would meet with petitioners at the Log Inn. *230 These meetings would generally be held outdoors because of the beautiful surroundings at the Log Inn property. In addition to acquiring two tracts of land in 1959, on June 30, 1961, petitioners acquired an additional tract of land, contiguous with the land which they had acquired on February 4, 1959. This tract of land was acquired at a cost of approximately $25,000. Some time during 1964 or 1965 petitioners became aware that Anne Arundel County contemplated constructing a sewage treatment plant in the vicinity of Annapolis, Maryland. In 1965 or 1966, petitioners employed an attorney to gather as much information as he could as to the construction of the sewage treatment plant. In January 1967, petitioners first learned that the specific site upon which the sewage plant was to be built was a tract of land located only a few hundred feet from the Log Inn property. Upon learning of the proposal to locate a sewage treatment plant on property so close to their property, petitioners studied the proposal and its ramifications and concluded that they should oppose the construction of the plant. The installation of the sewage treatment plant would have had a detrimental effect on petitioners' *231 property and other surrounding property. During 1967 the Board of Appeals of Anne Arundel County held a series of hearings with regard to the rezoning of the proposed sewage treatment plant site. Earlier hearings before a county zoning officer also took place in 1967. Late in 1967 the Anne Arundel County Zoning Board ruled in favor of rezoning the land to allow the construction of the sewage treatment plant on the proposed site near petitioners' property. Petitioners believed that the construction of the sewage treatment plant would be ruinous to the value of their property and would jeopardize the health of their children and visitors to the Log Inn. Petitioners were sincerely concerned about the effects of the sewage treatment plant on them, the plant employees and their entire neighborhood. They believed that if the plant were constructed they could not allow their children or themselves to swim in the adjoining bay. Furthermore, they believed that the odor of the plant would destroy their own enjoyment of the area, their meals and those of their guests, and that the danger from leaking chlorine would be dangerous to the entire neighborhood, including a nearby state park. *232 In 1967, the petitioners paid attorney's fees of $3,789.68 for representing them at the previously described hearings and to appeal the decision of the Anne Arundel County Zoning Board. On their 1967 Federal income tax return, petitioners claimed depreciation on their property located on Deepdene Road, on a portion of their residence at 635 St. Johns Road, in Baltimore, Maryland, and on the Log Inn. The Commissioner allowed all of the depreciation claimed on the Deepdene Road property and on the St. Johns Road residence. The Commissioner disallowed depreciation in the amount of $518.10 claimed on the Log Inn. In addition to depreciation claimed on buildings, petitioners claimed on their original 1967 Federal income tax return, numerous other depreciation deductions which were allowed by the Commissioner in full. On petitioners' amended 1967 Federal income tax return, they claimed increased deductions for depreciation on certain items, decreased depreciation claimed for other items, and claimed depreciation on additional tools, equipment, improvements and a stationbus. The categories of assets and the amounts of additional depreciation claimed on the amended return are set forth *233 below: ADDITIONAL DEPRECIATION CLAIMED ON AMENDED 1967 RETURN
CATEGORY
FOOTNOTE
DESCRIPTION
CLAIMED
ACQUISITION
NUMBER
CODE
OF ITEM
COST
DATES
1.
A
Tools and
$1,583.84
1967
Equipment
O
804.96
1966-1967
I
778.88
2.
A
Tools and
Equipment
2,915.03
1959-1964
O
2,915.03
1959-1964
D
0
3.
A*
Stationbus
2,721.75
1964
4.
A*
Improvements
1,608.70
1965
5.
A*
Equipment
1,644.38
1965
6.
A*
Equipment
1,171.85
1966
7.
A*
Improvements
248.91
1966
CATEGORY
DEPRECIATON
RATE AND KIND
TOTAL DEPRECIATION
NUMBER
PREVIOUSLY CLAIMED
OF DEPRECIATION
CLAIMED FOR 1967
1.
$ 155.78
SL 5 yrs
$ 316.77
20%
160.99
155.78
SL 5 yrs
155.78
2.
2,703.18
20%
211.85
2,594.11
320.22
109.07
(108.37)
3.
1,984.26
SL 4 yrs
680.43
4.
321.74
SL 10 YRS
160.87
5.
675.74
SL 5 yrs
328.87
6.
117.19
SL 10 yrs
117.19
7.
24.89
SL 10 yrs
24.89 Each category of assets shown on the above schedule and on petitioners' amended income tax return, is composed of the assets set forth in categories 1 through 7 below. Except as otherwise specified below, respondent concedes that the petitioners acquired the items and that the costs shown *234 in categories 1 through 7 constitute petitioners' cost. CATEGORY 1 TOOLS AND EQUIPMENT
DESCRIPTION
COST
DEPRECIATION
RATE AND
TOTAL
KIND
DEPRECIATION
@OF ITEM
CLAIMED
PREVIOUSLY
OF
CLAIMED FOR
CLAIMED
DEPRECIATION
1967
* Gravely tractor-
snowblade
$ 52.75
* $ 10.55
* Bug lights and
fly traps
81.40
* 16.28
Swivel chair
30.87
6.17
* Wire
103.00
* 20.60
* Fan
20.55
* 4.11
*Meyer seeder
52.53
* 10.50
File cabinet
28.72
5.74
Drawing table
9.21
1.84
File cabinet
30.84
6.16
File cabinet
23.66
4.73
Sorting rack
20.52
4.10
Swivel chair
30.87
6.17
Office chairs
36.93
7.38
Cabinet
10.18
2.03
Desk intercom
128.40
25.68
* Gravely seeder
118.45
* 23.69
$778.88
$155.78
SL 20%
$155.73 [1] CATEGORY 2 -- TOOLS AND EQUIPMENT Petitioners decreased the amount of the depreciation claimed *235 for this category of items. Respondent concedes petitioners' decrease in the depreciation claimed in 1967 in the category of assets.
CATEGORY 3 -- STATIONBUS Respondent concedes depreciation of the stationbus claimed on petitioners' 1967 amended Federal income tax return. CATEGORY 4 -- IMPROVEMENTS DESCRIPTION
COST
RATE AND KIND
TOTAL DEPRECIATION
OF ITEM
CLAIMED
OF DEPRECIATION
CLAIMED FOR 1967
Wire fencing
$ 545.08
SL 10 yrs
$ 54.51
Miscellaneous
fence materials
202.71
SL 10 yrs
20.27
Stapler and wire
for fence
12.88
SL 10 yrs
1.29
Fence material
79.69
SL 10 yrs
7.97
Fencing
55.38
SL 10 yrs
5.54
Miscellaneous
material-fence
35.69
SL 10 yrs
3.57
Fence posts
173.04
SL 10 yrs
17.30
Roofing material
504.23
SL 10 yrs
50.42
TOTAL
$1,608.70
$160.87
Respondent disputes the depreciation claimed for all of the above items on the basis that the subject assets are not depreciable assets. Respondent concedes petitioners' cost claimed in these disputed items. CATEGORY 5 -- EQUIPMENT DESCRIPTION
COST
RATE AND KIND
TOTAL DEPRECIATION
OF ITEM
CLAIMED
OF DEPRECIATION
CLAIMED FOR 1967
Gravely tractor with
attachments for lawn
mowing, cultivating,
plowing, etc.
$1,130.74
SL 5 yrs
$226.15
3 File cabinets
133.85
SL 5 yrs
26.77
Generator
226.55
SL 5 yrs
45.31
Furnace, blower, etc.
41.20
SL 5 yrs
8.24
Electric motor
30.84
SL 5 yrs
6.17
Lamp
19.95
SL 5 yrs
3.99
Pump
61.25
SL 5 yrs
12.25
TOTAL
$1,644.28 [2]
$328.87 [3]
*236 Respondent disputes the depreciation claimed for these items on the basis that the subject assets are not depreciable assets. Respondent concedes petitioners' cost claimed in these disputed items and that petitioners are entitled to the depreciation claimed on all other items enumerated above.
CATEGORY 6 -- EQUIPMENT DESCRIPTION
COST
RATE AND KIND
TOTAL DEPRECIATION
OF ITEM
CLAIMED
OF DEPRECIATION
CLAIMED FOR 1967
** Desk intercom
$ 128.46
SL 10 yrs
$ 28.85
* *237 Heat pump
302.85
SL 10 yrs
30.29
** Generator
226.55
SL 10 yrs
22.66
* Heater
118.42
SL 10 yrs
11.84
* Pipe
92.34
SL 10 yrs
9.23
* Air compressor
113.23
SL 10 yrs
11.32
* Air compressor
190.00
SL 10 yrs
19.00
TOTAL
$1,171.85
$117.19 [4] CATEGORY 7 -- IMPROVEMENTS Respondent concedes that the petitioners expended the amount of $248.91 for plywood in 1966 but does not concede that the plywood is a depreciable asset.
The Gravely tractor and its attachments were used at the Log Inn property for mowing the lawn, hauling repair materials and tools, hauling materials for the bull roast, plowing a vegetable garden maintained by the petitioners and for seeding the grounds to prevent erosion. All of the fencing material purchased by the petitioners was used to construct a fence around the Log Inn property to protect it from trespassers and vandals. The fan purchased by petitioners was used by them at their Deepdene property. The space heater was used at the Log Inn so that petitioners and their children *238 could reside at the Log Inn during cold weather. Although the furnace blower was purchased by petitioners for use in the Log Inn, it was stored in the Log Inn throughout 1967 and not installed. The generator was purchased by petitioners for emergency use during power failures, to demonstrate electronic equipment in remote areas, and for powering tools used to maintain and improve the property but was not used during 1967. The lamp, lights, fly traps, etc., were purchased by petitioners for use at the Log Inn property to reduce mosquitos and flies. The pump purchased by petitioners was used for pumping out the basement of the Log Inn. The heat pump purchased by petitioners, was stored in the Log Inn throughout 1967 but was not used during 1967. The air compressors purchased by petitioners were used for paint spraying, sand blasting, and general equipment and instrument cleaning. One of the paint sprayers was used to spray both the Deepdene Road office building and petitioners' St. Johns Road residence. OPINION The Commissioner disallowed the deduction petitioners claimed for depreciation of the Log Inn in the amount of $518.10. Respondent contends that petitioners are not entitled *239 to depreciate the Log Inn because they have failed to show that the building was "used in a trade or business" of petitioners or that it was "held for the production of income" by petitioners within the meaning of section 167(a) of the Code. [5]
During the year in question, the Log Inn was used for at least three purposes. During the early summer months petitioners and their children resided in the building during the weekends and eventually used the building as a full time summer home. An unexplained portion of the Log Inn was used for the operation of Whitcomb Associates. When petitioners resided in the building they also renovated the building for use as a restaurant. Petitioners admit some personal use of the Log Inn but contend that such use was negligible.Petitioners admit that the building was larger than was needed for use in the Whitcomb Associates business; however, they urge that such a factor should not preclude a depreciation deduction. Although the income from the annual bull roast event was reported on the corporate return of the Log Inn Co., petitioners attribute *240 such reporting to ignorance and poor professional guidance. We can find no basis for the allowance of depreciation on the Log Inn building. To the extent the Log Inn was used by petitioners as a summer home, it was not property which was either used in a trade or business or which was held for the production of income. Section 262 [6] precludes the deduction of any expenses incurred in connection with the personal use of the building. Commissioner v. Idaho Power Co.,418 U.S. 1 (1974). Petitioner claims that the Log Inn building was used exclusively for the business affairs of Whitcomb Associates. The record clearly does not support petitioners' position and the evidence is insufficient to show how much of the building was actually used for the operation of Whitcomb Associates.
The lack of facts in the situation here is similar to that involved in John T. Steen,61 T.C. 298, 305 (1973). As in Steen, we would be inclined to allow petitioners a deduction for depreciation on a small part of the Log Inn building *241 on the theory that it was used for the business of Whitcomb Associates. International Artists Ltd.,55 T.C. 94 (1970); United Aniline Co. v. Commissioner,316 F.2d 701 (1st Cir. 1963), affg. a Memorandum Opinion of this Court. However, this would require an allocation based upon a time, space or other ratio between the business and personal use, International Artists Ltd., at 107; George W. Gino,60 T.C. 304, 314 (1973), and the record is devoid of any credible evidence upon which we could even render a guess. This is not a situation in which the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), can aid petitioners.
Whether the activities conducted on the Log Inn property amounted to carrying on a trade or business within the statute is a matter of degree to be determined from all the facts. International Trading Co. v. Commissioner,275 F.2d 578 (7th Cir. 1960), affg. a Memorandum Opinion of this Court. Upon a full review of the record, we must conclude that petitioners' activities with respect to the Log Inn property did not constitute the conduct of a trade or business. Property is used in a trade or business when it is devoted to the trade or business. Property once *242 used in a trade or business but idled remains in such use unless withdrawn for business purposes or abandoned. P. Dougherty Co.,5 T.C. 791 (1945), affd. 159 F.2d 269 (4th Cir. 1946), cert. denied 331 U.S. 838 (1947); Kittredge v. Commissioner,88 F.2d 632 (2d Cir. 1937). However, depreciation is not allowable where the property was never devoted to the trade or business of the taxpayer. Richmond Television Corp. v. United States,345 F.2d 901, 908 (4th Cir. 1965), vacated and remanded per curiam on another issue 382 U.S. 68 (1965). Here, petitioners were not engaged in any restaurant activity when they acquired the Log Inn. They intended eventually to enter the restaurant business but they did not do so for the numerous reasons set forth in our findings. The income derived from the annual bull roast was reported by the Log Inn Co. and petitioners admit that the event was a function of the Log Inn Co. We have no facts to support petitioners' contention that the Association was dealing with petitioners in their individual capacities rather than as shareholder-owners of Log Inn Co. As we pointed out in Samuel Yanow,44 T.C. 444, 450 (1965), affd. 358 F.2d 743 (od Cir. 1966), *243 use by the corporation does not aid petitioners in establishing whether they were in a trade or business of renting property. It is petitioners' use that controls. Petitioners have improperly identified their activities with those of the corporation. The Log Inn had not been put into use nor was it ready for use. The inability to procure necessary licenses for operation of the restaurant supports our holding that petitioners never engaged in any trade or business activity. Nulex, Inc.,30 T.C. 769 (1958); sec. 1.167(a)-10(b), Income Tax Regs.
Moreover, the application for the liquor license filed with the Board of License Commissioners for Anne Arundel County, Maryland, was requested in the name of the corporate officers of the Log Inn Co. rather than by petitioners as individuals. Petitioners claim that the agreement for the annual bull roast was made by them in their individual capacities. However, they have presented no testimony or other evidence to support their position that the Log Inn was rented by them personally to the Association for the annual bull roast rather than by the Log Inn Co. We do not believe that such evidence exists. Interstate Circuit v. United States,306 U.S. 208, 226 (1939); *244 Wichita Terminal Elevator Co.,6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). To be entitled to depreciate the Log Inn based upon it being held for the production of income, petitioners must show that they either acquired the property with the intention of making a profit or that subsequent to its acquisition it was converted to a holding for the production of income. May v. Commissioner,299 F.2d 725, 728 (4th Cir. 1962), affg. 35 T.C. 865 (1961); Margit Sigray Bessenyey,45 T.C. 261 (1965), affd. 379 F.2d 252 (2d Cir. 1967). We have no evidence bearing on the acquisition of the property. When the property was refinanced the petitioners confided to the finance company that they began "thinking" about various methods of realizing a profit from the property. However, possession of only the thought of possibly engaging in restaurant activity at some future time is insufficient. American Properties, Inc.,28 T.C. 1100, 1114 (1957), affd. per curiam 262 F.2d 150 (9th Cir. 1958). Moreover, petitioners were approached by several people who desired to rent the Log Inn building or land in 1967 and, without explanation, they chose not to rent the property. There were no attempts *245 to rent the property and, except for the annual bull roast, the facts suggest the lack of any profit making motives for holding the properties. The recreational character of the Log Inn property coupled with petitioners' occupancy during the temperate months of the year tends to muddle the purpose of the holding. May v. Commissioner,supra at 727; Frank A. Newcombe,54 T.C. 1298, 1300 (1970). The improvements, repairs and maintenance made by petitioners to the Log Inn were of a nature to be susceptible to conflicting inferences.They could have been made to make the property suitable for a restaurant or they could have been intended to satisfy the personal tastes and comfort of petitioners. Carkhuff v. Commissioner,425 F.2d 1400, 1405 (6th Cir. 1970), affg. a Memorandum Opinion of this Court. Due to lack of convincing proof, we hold that the Log Inn property was not held by petitioners for the production of income in 1967. Petitioners contend that the $3,789.68 legal fees paid in connection with the zoning hearings and appeal of the zoning decision permitting construction of the sewage treatment plant are deductible under section 162(a) [7] or, in the alternative, section 212(2). *246 [8] *247 *248 Respondent contends that petitioners were not involved in any trade or business within the meaning of section 162 to which the legal fees could be attributed. He also contends that the property which would have been benefited by the prevention of the sewage plant construction was not held for the production of income. Moreover, respondent asserts that petitioners have failed to show by way of allocation what portion of the fees benefited the properties admittedly held for personal purposes. In any event, respondent contends, the legal fees should be capitalized because any benefit to the property would extend to years subsequent to 1967, the year of payment. Footnotes
A. -- per amended 1967 return ↩
O. -- per original 1967 return ↩
I. -- increase resulting from 1967 amended return ↩
D. -- decrease resulting from 1967 amended return ↩
*. -- new items, appearing only on 1967 amended return↩
*. Respondent disputes the depreciation claimed for these items on the basis that the subject assets are not depreciable assets. Respondent concedes petitioners' cost claimed in these disputed items and that petitioners are entitled to the depreciation claimed on all other items enumerated above. ↩
1. No explanation is given by the parties concerning the $.05 variance between the $155.78 additional depreciation claimed on petitioners amended return and the stipulated itemization totaling $155.73.↩
2. The parties have offered no explanation for the $.10 variance between the stipulated items and total of $1,644.28 and the actual total of $1,644.38 ↩
3. The parties have offered no explanation for the $.01 variance between the stipulated items and total of $328.87 and the actual total of $328.88↩
**. Petitioners concede that the depreciation claimed for 1967 should be decreased by the amount attributable to these items because these items were included in Category 5 which appears on Schedule E and in Category 1 which appears on Schedule B. ↩
*. Respondent disputes the depreciation claimed for these items on the basis that the subject assets are not depreciable assets. Respondent concedes the petitioners' cost claimed in these disputed items and that petitioners are entitled to the depreciation claimed on all other items listed above. 4. The parties have offered no explanation for the $16 variance between the stipulated items and total of $117.19 and the actual total of $133.19.↩
5. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
6. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
7. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *. ↩
8. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- * * *
(2) for the management, conservation, or maintenance of property held for the production of income; or * * *
Our conclusions regarding the lack of a depreciable nexus for the Log Inn building are equally applicable to deny deduction of the legal fees incurred by petitioners to prevent the installation of the sewage plant. Moreover, assuming that petitioners had established a trade or business to which the legal fees could be related or that the Log Inn building was held for the production of income, petitioners have failed to direct our attention to facts disclosing the extent to which the various properties they owned would have been benefited by the prevention of the sewage plant. In this regard, besides owning the Log Inn building and land, petitioners also purchased an adjacent tract of land from William T. Emory at the same time the purchased the Log Inn properties. On June 30, 1961, an additional tract was purchased.In addition, on October 20, 1967, petitioners acquired two additional parcels of land which petitioners admit were acquired for use as a personal residence. Petitioners have failed to provide any means of allocating the legal fees to the properties involved. Our final issue for decision involves numerous items upon which petitioners claimed depreciation on their amended 1967 Federal income tax return. Petitioners are confronted with the same obstacle to the depreciation of these items as they encountered in attempting to depreciate the Log Inn building. They have not established that they were engaged in a trade or business or that their property was being held for the production of income. Decision will be entered under Rule 155↩.