**Marjorie M. P. MAY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 8447.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 20, 1961.

Decided Feb. 21, 1962.

Ewing Everett, New York City (James M. Snee, New York City, on brief), for petitioner.

Gilbert E. Andrews, Jr., Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, and BRYAN and BELL, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

■ Yacht Sea Cloud when decommissioned, abandoned for personal use and held for sale became, says her owner, taxpayer Marjorie M. P. May, "property held for the production of income".[1] Thereafter, she contends, the yearly cost of conservation, maintenance and depreciation of the barque were proper deductions allowable in the computation of her Federal income taxes. While conceding that the law permits such deductions even on non-business properties, the Commissioner disallowed her claims because he concluded they did not meet the prescription of the statute. Accordingly, he assessed deficiencies totalling $166,444.13 for 1952 through 1955, the tax years now involved. The Tax Court upheld him and the taxpayer brings her claims here. We sustain the Tax Court.

For a summary of the design, character and history of the yacht we distill the undisputed findings of the Tax Court. Sea Cloud was built in 1931 for taxpayer in Kiel, Germany at a cost of $1,225,000 exclusive of furnishings later supplied. Four-masted, of steel construction and diesel-powered, she was fully fitted out with the most modern operating and navigation equipment, to an extent which justified Lloyds of London to rate her as meeting commercial ocean liner standards. The vessel merited the services of a full-time Chief Engineer and a crew of 72. Sea Cloud had a cruising range of 20,000 miles and had in accommodations for her owner and 8 guests the equivalent of a luxurious home: furnishings ranged from a replica early sailing ship's dining room to a stateroom ap-

---

1. Int.Rev.Code of 1939 §§ 23(a) (2), 23(*l*) (2), 26 U.S.C.A. § 23(a) (2), (*l*) (2), and Int.Rev.Code of 1954 §§ 167(a) (2), 212(2). While the solution of the problem is, of course, governed by the Internal Revenue Codes of both 1939 and 1954, this is not bothersome since the 1939 provisions as amended in 1942 are virtually the same as those of the 1954 code.

pointed in a French Provincial mode, and included two galleys, a barber shop and a well equipped hospital.

Except for a two-year lease to the Navy during World War II for convoy and weather patrol duty, the ship was at the continuous service of petitioner until personal use of the yacht was renounced in 1950. The crew was dismissed except for the Chief Engineer and four hands necessary to maintain a security watch. Tied up at Jacksonville, Florida, Sea Cloud was divested of furnishings, decommissioned and offered for sale in early 1951 for $1,200,000 furnished, or $1,000,000 unfurnished. Continuous efforts—some near-successful—were made until the yacht was finally sold in August 1955 for $500,000 as she stood to the wharf.

Expenses were those necessary to man the watch and continuously preserve the ship in readiness for sale. There is no question that the expenditures claimed were "ordinary and necessary expenses" and that the depreciation charged was reasonable. Counsel for the taxpayer concedes, with appreciated candor, that the vessel has never been chartered or offered for charter during the tax years. If renting or offering is essential to establish the property as held for the production of income, he acknowledges his cause cannot succeed. Admittedly it was not feasible to let the yacht to hire: first, the expense of recommissioning her was prohibitive and the time required a hindrance; and second, the rate of hire would have been at least $100,000 per month, a sharp discouragement to charter.

Therefore, the taxpayer pitches her case on the proposition that the yacht qualified as "property held for the production of income" by virtue of abandonment and holding for sale. The Tax Court found the evidence not to establish the abandonment and discerned no holding of the ship for income purposes.

We need not review the conclusion of the Tax Court as to the abandonment. Our affirmance rests upon the Court's determination that the yacht was not held to produce income. There is no combat within the evidence or its potential inferences, so that whether Sea Cloud was a property "held for the production of income" became, as taxpayer's counsel contends, purely a question of law. Trust Under the Will of Bingham v. Com'r, 325 U.S. 365, 371, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945). No error is seen in the Court's decision that the evidence was not sufficient in law to support the taxpayer. The peculiar features of the property and its treatment after retirement—all taken together—uncompromisingly dictate the Tax Court's resolution of the controversy.

To begin with, Sea Cloud was originally designed and constructed peculiarly as an instrument of recreation, hobby and sport, and has always continued so save in time of war. That is her very personality. It is not altered by her owner's renunciation. Indeed, the evidence manifests, and the Tax Court found, that even now to sell Sea Cloud the owner would have to seek a "market for a *luxury* yacht". No other market would furnish a demand, if any there was, for a property of this kind.

These facts—the nature of the property, its utility and marketability—of course do not show finally that the yacht could not be held for sale and thus "held for the production of income": the tax law recognizes that certain kinds of property held for sale without more may qualify for the deductions. Helene I. Fagan, 9 CCH Tax Ct. Mem. 44 (1950); Anna C. Newberry, 4 CCH Tax Ct. Mem. 262 (1945). But these features do put the yacht, to some degree, in a category of property certainly not plainly within the envisagement of the 1942 amendments and the 1954 code.[2]

In regard to non-business properties unrented or withdrawn from rent,

2. H.Rep. No. 2333, 77th Cong., 2d Sess., pp. 46, 74–75 (1942–2 Cum.Bull. 32, 410, 429–430); S.Rep. No. 1631, 77th Cong. 2d Sess., pp. 87–88 (1942–2 Cum.Bull. 504, 570–571).

these statutes disclose an intent to allow deduction of expenses and depreciation only on buildings and similar holdings. By its words Congress indicated it had in mind properties of an "investment" nature; especially, it did not propose to offer these deductions to sport, hobby and recreation assets.[3] In these respects the Treasury Regulations adopt a similar interpretation of the law. While the Congressional Committee Reports and the Regulations do not expressly restrict property held for income production to investment properties, they certainly connote as much by analogizing and contexting the two. Treas. Reg. 1939 Code 118, § 39.23(a)–15; Treas. Reg. 1954 Code § 1.212–1. These are all considerations in the ascertainment of the tax cast of the property.

Again, while the absence of any renting or offer to rent the vessel may not, as the taxpayer contends, be an event or effort indispensable to the establishment of a holding for the production of income, at any rate it is generally the immediate and obvious means of obtaining income. Undoubtedly its absence is quite significant, severely impairing the property's status as income-producing. Likewise, the concessum that no gain whatsoever was contemplated in the sale of Sea Cloud may not be decisive but it measurably detracts from the taxpayer's stand.

The most telling deficiency in the taxpayer's case is the failure to demonstrate an affirmative conversion of the property to a potentially income-yielding asset. Renunciation and abandonment of the ship for personal use are but stages of transition to income-producing stature. Alone, they would not change the yacht's function from fun-making to money-making, and they did not in this instance establish her owner as a rentier. Nothing positive to indicate such conversion is brought out in the taxpayer's presentation. The mere listing for sale did not perforce render the yacht income-held. When property has the unique qualities of a pleasure boat, even stouter evidence of conversion is demanded than is requisite in the absence of such unicity. In contrast, a building such as a residence changes its character as readily as its owner takes up other abode, since for that purpose he cannot at whim return. But this is not so of a yacht singly bent for enjoyment. There is no presto change in that instance and the taxpayer proves no such metamorphosis here.

Actually, Sea Cloud did nothing in the four tax years in pursuit of income. Then for what was she held? The obligation to satisfy this query was the taxpayer's but she did not fulfill it. Burnet. v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991 (1931). On this record, to repeat, no fault can be found with the judgment of the Tax Court that the evidence was not legally sufficient to demonstrate a holding of Sea Cloud for the production of income.

Affirmed.

---

3. Of particular pertinence, from the House Report, supra: "For an expense to be deductible under this section, it must have been incurred either (1) for the production or collection of income, or (2) for the management, conservation, or maintenance of property held for the production of income. * * * Expenses incurred in managing or conserving property held for investment may be deductible under this provision even though there is no likelihood that the property will be sold at a profit or will otherwise be productive of income. The expenses, however, of carrying on a transaction which does not constitute a trade or business of the taxpayer and is not carried on for the production of income or for the management, conservation or maintenance of property, but which is carried on primarily as a sport, hobby, or recreation are not allowable as nontrade or nonbusiness expenses."