IDA MEREDITH, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6897-73, 6898-73.     Filed October 14, 1975.

*Peter S. Buchanan,* for the petitioner.
*Thomas F. Kelly,* for the respondent.

38

OPINION

Petitioner, to be entitled to deductions for depreciation and maintenance expenses under sections 167(a)(2)[5] and

---

[5] All statutory references are to the Internal Revenue Code of 1954, as amended.

212(2),[6] must demonstrate that the Pebble Beach property was "property held for the production of income" during the years 1969 through 1971. The quoted phrase in both sections arises from the Revenue Act of 1942, 56 Stat. 798, 819. Since both sections embody an identity of purpose, the phrase must be given the same construction in one as in the other. *Commissioner v. Ridgway's Estate*, 291 F. 2d 257, 259 (3d Cir. 1961), affg. 33 T.C. 1000 (1960); *Frank A. Newcombe*, 54 T.C. 1298 (1970).

Petitioner advances the argument that prior to 1969 she had forever abandoned the Pebble Beach property as a secondary residence, and that under our decision in *Mary Laughlin Robinson*, 2 T.C. 305 (1943), the property was converted to "property held for the production of income" by being listed for sale or rent. In support of her position, petitioner has also cited section 1.212-1(b) and (h), Income Tax Regs., which provides:

(b) The term "income" for the purpose of section 212 includes not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years; and is not confined to recurring income but applies as well to gains from the disposition of property. * * * Similarly, ordinary and necessary expenses paid or incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired. Expenses paid or incurred in managing, conserving, or maintaining property held for investment may be deductible under section 212 even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto.
* * *

(h) Ordinary and necessary expenses paid or incurred in connection with the management, conservation, or maintenance of property held for use as a residence by the taxpayer are not deductible. However, ordinary and necessary expenses paid or incurred in connection with the management, conservation, or

---

SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—* * *

(2) of property held for the production of income.

[6] SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
* * *

(2) for the management, conservation, or maintenance of property held for the production of income; or * * *

maintenance of property held by the taxpayer as rental property are deductible even though such property was formerly held by the taxpayer for use as a home.

In connection therewith, she contends that the holding of the Pebble Beach property for rental purposes, and the taxable gain she realized from its disposition in 1972, render the Pebble Beach property, "property held for the production of income" irrespective of the fact that it was not "currently productive" during the years in issue.

Respondent does not agree. His primary argument is that petitioner never abandoned the Pebble Beach property as a secondary residence and he urges that the evidence demonstrates the continued use of the Pebble Beach property as a weekend resort. His secondary argument is that even if the Pebble Beach property were abandoned, it was never converted to "property held for the production of income" since petitioner has never made a bona fide effort to rent it.

We find that the property was abandoned as a secondary residence prior to 1969. Although either petitioner or Knowles made semimonthly visits to the property during the years in issue, petitioner's evidence clearly demonstrates that such visits were made, at least primarily, for reasons related to the sale or rental of the property. Furthermore, respondent's evidence on this point is unconvincing. He would have us believe that the following facts warrant but one explanation—that petitioner was continuing to use the house as a weekend resort. We disagree.

(a) Petitioner or Knowles visited the house approximately twice per month and the company's property listing forms stated that the house would be occupied by the owner "on weekends" or "at intervals." However, Winslow testified that these recitations did not mean every weekend. Furthermore, we have already found that these visits were made primarily for the purpose of renting or selling the property.

(b) The utilities were operative during the years in issue. It is obvious that this was necessitated by the presence of an electrical burglar alarm system and the use of water by petitioner's gardener.

(c) The house contained two telephones, and both petitioner and Knowles were listed in the Pebble Beach directory. It seems clear that during the aforementioned visits petitioner or Knowles would desire to have a telephone available for use. They could not reasonably have been expected continuously to request that

the telephone company disconnect the telephones during their absence.

(d) The house was well furnished and always available for use by petitioner and her family. This fact simply does not. support respondent's contention. Every abandoned residence is available for use by the owner until actual rental or sale. Merely because the Pebble Beach house was well furnished fails to prove that petitioner was utilizing it as a resort. The commonsense of the matter is that petitioner furnished the house as a second residence. Upon abandonment, she already possessed a fully furnished residence in Oakland and merely left the furnishings of the Pebble Beach house intact.

(e) In 1972 Knowles purchased a residence adjacent to the Pebble Beach property. He currently travels there with the same frequency with which he visited the Pebble Beach property. We agree that this indicates use of the property as a resort by Knowles. It is not in itself, however, sufficient to prove respondent's position. After careful consideration of the evidence we conclude that petitioner had abandoned the Pebble Beach house as a secondary residence prior to 1969.

Proof of abandonment is, however, only the first hurdle petitioner must overcome to succeed in the instant case. Petitioner must also bear the burden of proving the property was being held for the production of income *during the years in issue. Frederick H. Prince Trust,* 35 T.C. 974 (1961); *Marjorie M. P. May,* 35 T.C. 865 (1961), affd. 299 F. 2d 725 (4th Cir. 1962). Put another way, petitioner must show that the property was being used for a profit-seeking purpose during the years in question. *Samuel Yanow,* 44 T.C. 444 (1965), affd. 358 F. 2d 743 (3d Cir. 1966); cf. *United States v. Gilmore,* 372 U.S. 39, 44-45 (1963). *Carkhuff v. Commissioner,* 425 F. 2d 1400 (6th Cir. 1970), affg. T.C. Memo. 1969-66. We conclude that petitioner has failed to make the requisite showing.

In cases of this type the critical inquiry is the intention of the taxpayer as gleaned from all of the facts and circumstances. *William C. Horrmann,* 17 T.C. 903, 907 (1951); *Samuel Yanow, supra* at 452. Prior to 1969, petitioner had held the Pebble Beach property for 18 years without receiving any rental income. During this period all efforts to rent the property were handled exclusively by real estate agencies, primarily the company. However, Winslow, an agent for the company, testified that the

company never actively pursued a rental business and did not advertise rental properties in newspapers. She also testified that the company's rental activities did not extend beyond keeping a list of rental properties for the convenience of property owners. Furthermore, after 1968 petitioner and Knowles alone possessed keys to the house which limited realtors in showing the house to prospective lessees. It seems clear to us that petitioner could not reasonably have expected that the identical efforts which had yet to produce any rental income would suddenly be productive during the years in issue. Still petitioner made no effort on her own behalf to rent the property. Thus, although the rental market in the Pebble Beach area was minimal, petitioner took less than minimal steps to rent the property. It cannot be gainsaid that during the years in issue petitioner had no reasonable expectation of realizing rental income from the property. Absent such expectation, the property was not held for the production of rental income. *William K. Coors*, 60 T.C. 368, 410 (1973), affd. sub nom. *Adolph Coors Co. v. Commissioner*, 519 F. 2d 1280 (10th Cir. 1975); *Alfred I. duPont Testamentary Trust*, 62 T.C. 36, 47 (1974), affd. in part and remanded on another issue 514 F. 2d 917 (5th Cir. 1975).

As noted above, petitioner has cited section 1.212-1(h), Income Tax Regs., in support of her position. However, a prerequisite to its applicability is a finding that the property was held as rental property. To the contrary, we have found that petitioner's rental efforts were spasmodic and halfhearted during the years in issue. We can only conclude that petitioner did not make a bona fide attempt to rent the property during these years. Hence, the aforenoted regulation is inapplicable to the instant case.

Petitioner's reliance on section 1.212-1(b), Income Tax Regs., is similarly misplaced since a determination that the property is "held for investment" is a prerequisite to its applicability. *Frank A. Newcombe, supra* at 1302. Since petitioner was not holding the property for rental income she must show that she was holding the property for postconversion appreciation to meet this condition. *Frank A. Newcombe, supra.* Petitioner has failed to do so, as the evidence clearly indicates a continuing attempt to dispose of the property from the time it was abandoned. As we said in the *Newcombe* case:

> The placing of the property on the market for immediate sale, at or shortly after the time of its abandonment as a residence, will ordinarily be strong

evidence that a taxpayer is not holding the property for postconversion appreciation in value. Under such circumstances, only a most exceptional situation will permit a finding that the statutory requirement has been satisfied. * * * [*Frank A. Newcombe, supra* at 1302.]

In effect petitioner was merely attempting to dispose of a personal residence, albeit a second home, and never held it to realize the gain from postconversion appreciation. Under such circumstances the property was not "held for the production of income" through realization of gain from the disposition of property.

Petitioner's reliance on *Mary Laughlin Robinson*, 2 T.C. 305 (1943), is also without merit. In that case, the taxpayer abandoned her home and listed it for rent or for sale with two real estate firms which, in spite of diligent efforts, were able to rent only the garage. There we said:

In this matter the taxpayer no longer used the property as a residence, and prior to the time the expenses were incurred the property had been appropriated to income-producing purposes by affirmative action, in that the property had been abandoned as a residence and had been listed for rent or for sale with two real estate firms, which had made diligent efforts and carried on numerous negotiations with prospective purchasers or tenants. Though such efforts were unavailing, for the firms were unable either to rent or sell the house, nevertheless, in our opinion the property was held for the production of income, within the meaning both of the statute and the regulation. [*Mary Laughlin Robinson, supra* at 307.]

The distinction between *Robinson* and the instant case is obvious. Unlike the taxpayer in *Robinson,* petitioner herein made no bona fide attempt to rent the property during the years in issue. Moreover, factual contexts of the two cases are markedly different. In *Robinson* the question before us was whether the taxpayer therein had ever abandoned her residence and appropriated it to income-producing purposes. We held that a bona fide listing "for rental" was sufficient to demonstrate such appropriation. However, it does not follow that once a personal residence is converted to income-producing property it forever retains that status. It is in this context that the instant case arises. Assuming arguendo that prior to 1969, petitioner's property had been converted to "property held for the production of income," the lack of any income for 18 years and the lack of any serious rental effort during the years in issue preclude a finding that petitioner continued to hold the property for income-producing purposes. Cf. *Gilbert Wilkes,* 17 T.C. 865 (1951).

In this connection we reiterate that our inquiry in cases of the type involved herein must focus on the intention of the taxpayer. The standard set forth in *Robinson* is an objective test, necessitated by administrative convenience, for the determination of such intent. Cf. *Warren Leslie, Sr.,* 6 T.C. 488, 494 (1946). Hence a taxpayer who makes the showing essential to meet the *Robinson* standard will no longer hold the property for "income-producing purposes" where other circumstances unequivocally demonstrate a dissipation of his profit-seeking motive. The instant case is such a situation. We hold that petitioner did not hold the Pebble Beach property for the production of income during the years 1969, 1970, and 1971.

We are aware that our holding, herein, is inconsistent with the decision in *Hulet P. Smith,* T.C. Memo. 1967-28, affd. per curiam 397 F. 2d 804 (9th Cir. 1968). But as we said in *Frank A. Newcombe, supra* at 1303:

But our statement in that case [*Hulet P. Smith*] that the issue was a "question" of "law" is belied by the affirmance by the Ninth Circuit on the ground that "we are not persuaded that the Tax Court's factual finding and its consequent conclusions are clearly wrong" and the statement that "the Government makes a strong case for reversal." See 397 F. 2d at 804. We therefore consider that case inapposite and of little precedential value.

Petitioner has presented no evidence whatsoever regarding the receipt of dividend income in 1969. Respondent's determination on this issue must stand. *Welch v. Helvering,* 290 U.S. 111 (1933).

*Decisions will be entered for the respondent.*