TERRENCE D. CLANCY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Clancy v. Commissioner
Docket Nos. 5543-76, 10353-76.
United States Tax Court
T.C. Memo 1978-85; 1978 Tax Ct. Memo LEXIS 434; 37 T.C.M. (CCH) 400; T.C.M. (RIA) 780085; February 28, 1978, Filed Peter S. Buchanan, for the petitioner. Warren N. Nemiroff, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies in petitioner's Federal income tax returns as follows: Taxable Year
Deficiencies
1973
$3,595.00
1974
2,786.90
The question remaining for decision is whether petitioner is entitled to deduct claimed rental expenses of $9,859.00 and $11,223.00 in the taxable *436 years 1973 and 1974 under the provisions of sections 162 and/or 167 and 212. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time of the filing of the petitions herein, Terrence D. Clancy, hereinafter referred to as petitioner, resided in San Francisco, California. Petitioner filed his Federal income tax returns for the taxable years 1973 and 1974 with the District Director of Internal Revenue at Fresno, California. On or about June 12, 1973, petitioner purchased a two-bedroom frame house and land, hereinafter referred to as Woodhouse, at Pajaro Dunes, California for $72,500.00. Pajaro Dunes is a combination condominium and single family residence development located on the Pacific Ocean about 90 miles south of San Francisco. The vicinity in which Pajaro Dunes is located is a resort area which caters primarily to day visitors and weekend vacationers. The rental season for Pajaro Dunes is the summer and holiday weekends. For the years 1973 and 1974, petitioner reported $278.00 and $1,244.00 respectively in rental income and claimed a net "deductible" *437 loss of $9,581.00 and $9,979.00 respectively. The new "deductible" loss for each year was computed as follows: 1973
1974
Depreciation
$ 3,175.00
$ 3,796.00
Repairs
1,663.00
151.00
Repairs - Misc.
149.00
Auto Expenses
144.00
Cleaning and Hauling
28.00
119.00
Insurance
225.00
476.00
Interest
2,918.00
3,530.00
Licenses
66.00
348.00
Management Fees
361.00
Maintenance
10.00
638.00
Misc. Expenses
12.00
196.00
Office Expenses - Supplies
661.00
10.00
Taxes - Property
700.00
1,386.00
Telephone
20.00
169.00
Utilities
116.00
348.00
Travel
130.00
56.00
Total Expenses
$10,378.00
$11,223.00
Less 5% Personal Use
519.00
Total "Deductible" Expenses
$9,859.00
$11,223.00
Gross Rentals
278.00
1,244.00
Claimed Net Deductible Loss
$9,581.00
$ 9,979.00
The Pajaro Dunes rental program is operated exclusively through two agencies: Hare, Brewer, and Kelley, Inc., and Holzman and Daw, Inc. Both agencies maintain full-time offices at Pajaro Dunes. Normally, the term of rental occupancy is one week or less, generally for vacation or business seminar use, more of a transient rental than residential. Prior to the purchase of *438 Woodhouse, petitioner received from Mr. Kelley of Hare, Brewer and Kelley, Inc., a document entitled "Pajaro Dunes Rental Program" which set forth the average annual rental per unit for the years 1970 through 1972. Petitioner was also informed by Hare, Brewer and Kelley that he could expect to get considerable rentals over an extended period of time and that he could expect significant appreciation in the value of the Pajaro Dunes properties. At the time of the purchase of Woodhouse, considerable work was necessary to repair Woodhouse, make it safe for occupancy and enhance its attractiveness as rental property. Petitioner expended at least $5,000.00 in preparing Woodhouse for rental occupancy. In August, 1973, upon completion of the repair work, petitioner executed a Rental Program Agreement, by which Hare, Brewer and Kelley, Inc., was given the exclusive rights to offer Woodhouse for rent. Woodhouse was used by petitioner 18 days in 1973 and was not used at all by petitioner in 1974. Woodhouse was available for rent 347 days in 1973 and 365 days in 1974. On April 4, 1977, petitioner sold Woodhouse for $86,000.00. Respondent determined that petitioner did not acquire and *439 maintain Woodhouse with the intent to make a profit therefrom and that the property was not acquired or maintained for use in petitioner's trade or business or held for the production of income. Accordingly, respondent disallowed petitioner's claimed rental expenses of $9,859.00 and $11,223.00 for the taxable years 1973 and 1974, respectively, which petitioner had claimed under sections 162 and/or 167 and 212. OPINION In 1973, petitioner purchased Woodhouse for $72,500.00. Woodhouse is located in Pajaro Dunes, a vacation type community with seasonal, recreational appeal. Petitioner entered into a rental agreement with one of the two rental agencies which deals exclusively with renting units in Pajaro Dunes. Woodhouse was available for rent 95% of the time in 1973, and 100% of the time in 1974. Petitioner sold Woodhouse in 1977 for $86,000.00. On his Federal income tax returns for 1973 and 1974, petitioner reported net "deductible" losses of $9,581.00 and $9,979.00, respectively. Respondent disallowed the deduction. Respondent contends that the property was not used in petitioner's trade or business and that since petitioner knew he could not make a profit from the rentals *440 of Woodhouse, that Woodhouse was not property held for the production of income within the meaning of section 212(1) and (2). Respondent thus contends any deduction attributable to the property is subject to the limitations of section 183. The record indicates that the expenses of Woodhouse are not deductible under section 162. There is no evidence of any of the factors which would lead to the conclusion that petitioner was in the trade or business of real estate sales. See Ayling v. Commissioner,32 T.C. 704 (1959). Since the expenses of Woodhouse are not deductible under the provisions of section 162, in order for them to be properly deductible they must be deductible under the provisions of sections 212(2) and 167(a)(2).
Section 212(2) provides for the deduction of all the ordinary and necessary expenses paid for the management, conservation, or maintenance of property held for the production of income. Section 167(a)(2) provides for a depreciation deduction for the reasonable *441 wear and tear of property held for the production of income. The phrase "held for the production of income" first appeared in the tax law with the Revenue Act of 1942. Section 121 of the Revenue Act of 1942 amended section 23(a) of the 1939 by adding paragraph (2) which allowed a deduction for nontrade or nonbusiness expenses incurred for the maintenance, management, or conservation of property held for the production of income. Section 121 of the Revenue Act of 1942 also amended section 23(1) to allow for a depreciation deduction on property "held for the production of income." Section 23(a)(2) is the forerunner of section 212 of the Internal Revenue Code of 1954. In defining the phrase "held for the production of income," the Senate Finance Committee accompanying the Revenue Act of 1942 stated: [2]
The term "income" for this purpose comprehends not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years, and is not confined to recurring income, but applies as well to *442 gain from the disposition of property. Expenses incurred in managing or conserving property held for investment may be deductible under this provision even though there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto. Section 1.212-1(b), Income Tax Regs., clearly adopts the congressional interpretation of income which reads as follows: (b) The term "income" for the purpose of section 212 includes not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years; and is not confined to recurring income but applies as well to gains from the disposition of property. For example, if defaulted bonds, the interest from which if received would be includible in income, are purchased with the expectation of realizing capital gain on their resale, even though no current *443 yield thereon is anticipated, ordinary and necessary expenses thereafter paid or incurred in connection with such bonds are deductible. Similarly, ordinary and necessary expenses paid or incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired. Expenses paid or incurred in managing, conserving, or maintaining property held for investment may be deductible under section 212 even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto. Since the phrase "held for the production of income" in sections 167(a)(2) and 212(2) arises from the same Revenue Act and has the same purpose, the *444 phrase must be given the same construction in one as in the other. Meredith v. Commissioner,65 T.C. 34 (1975); Commissioner v. Ridgway's Estate,291 F.2d 257, 259 (3d Cir. 1961), affg. 33 T.C. 1000 (1960). Whether the property was held primarily for the production of income rather than for hobby, sport or recreation is a question of fact to be determined from all the circumstances of the case. Section 1.212-1(c), Income Tax Regs., May v. Commissioner,35 T.C. 865 (1961), affd. 299 F.2d 725 (4th Cir. 1962). The absence of economic indicators of a profit may be appropriately considered in making the determination of whether the property was held for investment. However, once the determination is made that the property is held for investment, the subsequent absence of the economic indicators of profit during any given period of time will not preclude a deduction under section 212. Newcombe v. Commissioner,54 T.C. 1298 (1970). Accordingly, if the Court finds *445 the property was acquired for the production of income, the fact that petitioner realized he could not make a profit from the rentals of the property alone, does not change the status of the property and the allowable deductions under sections 212(2) and 167(a)(2). Based on a review of the facts of this case, the Court finds that petitioner purchased Woodhouse for the production of "income" as the term is used in section 212. Prior to the purchase of Woodhouse, petitioner had completed the sale of similar property at Pajaro Dunes at a profit. Prior to the purchase of Woodhouse, petitioner was informed by a member of the agency which operates the rental program of Pajaro Dunes that petitioner could expect reasonable rental income and considerable appreciation from Woodhouse. After the purchase, petitioner expended considerable amounts in enhancing the property for rental. Subsequently, petitioner entered into a leasing agreement with the agency which maintains a full-time rental office at Pajaro Dunes. Another significant factor is the petitioner's lack of personal use of Woodhouse. Petitioner only used Woodhouse for 18 days in 1973 and did not use it at all in 1974. It is *446 this factor of non-use by petitioner that clearly distinguishes this case from those cited by respondent for the proposition that property held for appreciation and rental is not property held for the production of income. The cases cited by respondent involve considerable personal use by the taxpayer. Clearly, that is not the situation here. Here, as in Coors v. Commissioner,60 T.C. 368 (1973), in which this issue was decided for the taxpayer, the taxpayer had a rental agreement with a property management firm and the property was held out for rental at least 95 percent of the year in question. The fact that petitioner's agents actively sought to rent Woodhouse distinguishes this case from Meredith v. Commissioner,supra, in which this Court held the property was not held for the production of income since the taxpayer's rental efforts were "spasmodic and half-hearted," Meredith v. Commissioner,supra, at 42. While the rental income did not come up to petitioner's expectations, the property did in fact appreciate in value.In Newcombe v. Commissioner,54 T.C. 1298, 1302-1303 (1970), this Court stated: *447 * * * if a taxpayer believes that the value of the property may appreciate and decides to hold it for some period in order to realize, upon such anticipated appreciation, as well as an excess over his investment, it can be said that the property is being "held for the production of income." Since the Court has found that petitioner held the property for the production of income, the fact that he rented the property, coupled with the fact that he did not use the property for his personal use does not change the status of the property. Accordingly, since petitioner has established that Woodhouse was held for the production of income, petitioner is entitled to the deduction under sections 212(2) and 167(a)(2). No evidence was presented regarding the issue of whether petitioner is entitled to office in home deduction of $300.00 for the year 1973 under the provisions of section 162. Apparently, there is a misunderstanding as to whether this issue was settled prior to trial. No useful purpose would be served in reopening the case for receiving evidence on this issue, since in light *448 of Sharon v. Commissioner,66 T.C. 515 (1976), it appears that petitioner would not be entitled to the deductions. Decisions will be entered under Rule 155. Footnotes
2. S. Rept. No 1631, 77th Cong., 2nd Sess. (1942), 1942-2, C.B. 504, 571↩.