T.C. Memo. 1997-480


UNITED STATES TAX COURT


HARRY E. THOMASON AND ESTATE OF HATTIE D. THOMASON, DECEASED,
MARY T. CRIST, PERSONAL REPRESENTATIVE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8746-95.                    Filed October 22, 1997.


<u>John R. Foley</u>, for petitioners.

<u>Leslie H. Finlow</u>, for respondent.


MEMORANDUM OPINION


COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1]

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. After the petition was filed, petitioner Hattie D. Thomason died, and her daughter, Mary T. Crist, personal representative of the estate of Hattie D. Thomason, was substituted on behalf of the
(continued...)

Respondent determined a deficiency of $5,331 in petitioners' Federal income tax for 1991.

The issues for decision are: (1) Whether petitioners were engaged in a trade or business activity within the intent and meaning of section 162(a) and, (2) if petitioners were not engaged in a trade or business activity under section 162(a), whether some or all of the expenses claimed as trade or business expenses are otherwise deductible under section 212(1) and (2) as expenses paid or incurred for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income.

Some of the facts were stipulated, and those facts, with the annexed exhibits are so found and are incorporated herein by reference. At the time the petition was filed, petitioners' legal residence was Fort Washington, Maryland.

Harry E. Thomason (petitioner) and Hattie D. Thomason (Mrs. Thomason) were married in 1947, and, during the following year, petitioner became employed as a patent examiner by the U.S. Patent Office in Washington, D.C. In 1949, petitioner and Mrs. Thomason bought a parcel of real estate in Prince George's County, Maryland, and began building several rental houses there over a period of years. The houses were built substantially by

---

[1](...continued)
estate of the deceased petitioner. Rule 63.

petitioner and his family, with some of the bulldozing, electrical wiring, and other similar work contracted out.  All of the houses were built for rental.  Petitioner managed the rental of all of the houses, three of which were owned by his children.  Petitioner's management activity included advertising, selecting prospective tenants, and maintenance and improvement of the houses.

About the time some of the first rental houses were being built, petitioner also began attending night classes to obtain a law degree.  Sometime after receiving his law degree, petitioner became a patent attorney.

In 1957, petitioner left his position with the U.S. Patent Office and subsequently became employed by the U.S. Army Material Command in the patent area.[2]  As a result of a "reduction in force" petitioner's employment with that agency terminated in 1972.  Petitioner thereafter did not pursue salaried employment.

From 1972 through 1991, the primary source of income for petitioner and Mrs. Thomason was the rental of the houses in Prince George's County, Maryland.  During 1991, at least 90 percent of petitioner's income was derived from the rental of these houses.

---

[2]    It is unclear from the record whether petitioner began his duties at the U.S. Army Material Command as a patent attorney or whether he began as a patent examiner and later became a patent attorney.

Petitioner is highly educated in the field of solar energy and is a well-known authority in that field. Petitioner is also an accomplished inventor in the field of solar energy and has acquired 36 patents in that area over a series of years. Petitioner and his son have become extremely knowledgeable about the generation of electricity by solar energy. The two have developed methods of heating water for household purposes through the use of solar energy and also have developed a method of heating and cooling a building using solar energy.

In 1959, petitioner built a successful solar heated home utilizing the solar heating system he developed bearing the trademark name of "Solaris". As petitioner refined his inventions in the field of solar energy, he would build a new house and incorporate therein the newer technology. In 1962, petitioner incorporated an entity known as Thomason Solar Homes, Inc., through which he conducted the building, testing, and patenting of solar energy equipment.

Along with his research and inventions, petitioner actively pursued the passage of the Solar Heating and Cooling Demonstration Act of 1974, Pub. L. 93-409, 88 Stat. 1069 (codified as amended at 42 U.S.C. secs. 5501-5517 (1994)), which provided, in part, for the development and demonstration of solar heating and cooling systems for use in residential dwellings. Petitioner has also been an organizer and an active member of the

American Energy Association and the American Energy Society, both of which are "citizens' action groups" whose purpose is to locate, and pursue the prosecution of, violators of various energy laws.

Additionally, petitioner has conducted seminars in solar energy over the years. Some of these solar energy seminars were conducted at George Washington University in Washington, D.C. During 1991, petitioner made several speaking appearances on this subject, including a keynote speech at the University of Dubuque, Iowa.[3]

Finally, during 1991, Thomason Enterprises was formed for the stated purpose of acquiring rental real estate. However, Thomason Enterprises later became a part of Thomason Solar Homes, Inc.[4]

In January 1991, petitioner and Mrs. Thomason purchased a condominium in Manatee County, Florida, at a public auction for $1,950. They subsequently began to advertise the condominium for sale or rent in the Washington Post, a newspaper of daily circulation in Washington, D.C. Petitioner intended to make "a

---

[3]    Petitioner's accomplishments in the field of solar energy have been recognized by an article in the Reader's Digest, by publications of the Department of the Treasury, the U.S. Customs Service, and the Audubon Naturalist Society, and in a Mexico City newspaper, the Washington Post, and the former Washington, D.C., Evening Star.

[4]    The record does not reflect when or in what manner Thomason Enterprises became a part of Thomason Solar Homes, Inc.

quick profit" by selling the condominium; however, in the event it could not be sold quickly, it would be rented out in order to realize a return.  Petitioner estimated the value of the condominium at the time of purchase to be $22,000.  It was advertised for a sale price of $31,500; however, no lease price was set out in the advertisements.  One potential lessee was quoted a rental fee of $375 per month, plus $58.10 for the monthly condominium maintenance fee, plus utilities.  The record is not clear whether the property was ever rented out.  The record is clear, however, that it was not rented during 1991, nor was the property ever sold.

On their 1991 Federal income tax return, petitioners reported on Schedule C, Profit or Loss from Business, income of zero, and a net loss of $24,613 consisting of the following expenses:

| | |
|---|---|
| Advertising | $ 1,035 |
| Car and truck expenses | 1,035 |
| Commissions and fees | 1,138 |
| Insurance (other than health) | 56 |
| Legal and professional services | 5,540 |
| Office expense | 663 |
| Repairs and maintenance | 497 |
| Supplies | 4,152 |
| Taxes and licenses | 3,769 |
| Travel, meals and entertainment | |
|     Travel | 3,232 |
|     Meals and entertainment | 2,586 |
|       (after the 20% limitation) | |
| Utilities | 910 |
|   Total expenses | $24,613 |

The Schedule C filed with petitioners' 1991 return fails to state the principal business or profession, the business name, and the business address of petitioners' trade or business activity. Petitioners reported the rental income and other expenses from their rental houses in Prince George's County, Maryland, on Schedule E, Supplemental Income and Loss, of their 1991 Federal income tax return, which included a detailed statement of their rental expenses, separately listing each category of expense and identifying each amount separately as to each house for which the expense was incurred. Based on the testimony at trial, the expenses incurred by petitioners for the Florida condominium were claimed on Schedule C as trade or business expenses.

In the notice of deficiency, respondent disallowed all of the expenses claimed by petitioners on Schedule C of their 1991 return for the following reasons: (1) Petitioner and Mrs. Thomason failed to establish that a valid business activity was in existence during 1991; (2) expenses relative to the Florida condominium were not deductible as a Schedule C activity; (3) expenses relative to the corporation were deductible by the corporation on a corporate return; and (4) expenses relative to rental units were deductible on Schedule E and had "already been considered" on that schedule.[5]

---

[5] On Schedule E of their 1991 return, petitioners reported gross rental income from 14 properties totaling $114,860, total
(continued...)

At trial, respondent acknowledged that, as to Schedule C expenses, petitioner could substantiate that he "spent $24,000" in 1991, nevertheless, "[respondent had] no way of knowing to where those expenses would be assigned", and "that seems to be the crux of this case." The Court construes this statement to mean that, while respondent was satisfied that petitioners' Schedule E correctly reflected the income and expenses for those properties identified on Schedule E, respondent could not determine whether any of the expenses claimed on Schedule C related to any of the rental properties on Schedule E, and, moreover, respondent was satisfied that petitioners were not engaged in any trade or business activity and, therefore, were not entitled to a deduction for any of the expenses claimed on Schedule C.

The only documentary evidence presented by petitioner to substantiate the Schedule C expenses, and to support a categorization thereof, was a stack of 143 canceled checks written by petitioner in 1991, which he contends were paid in connection with his various activities that year. The submitted checks total approximately $30,000.[6]

---

[5](...continued)
expenses and depreciation of $58,739, and net rental income of $56,121. Respondent made no adjustments to either the income or expenses reported on Schedule E.

[6]    This amount excludes approximately $1,500 worth of "voided"
(continued...)

Petitioner maintained at trial that he was engaged in a trade or business during 1991.

The determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to prove that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra.

The principal issue is whether petitioners were engaged in a trade or business activity during 1991, and, if so, what was that activity. At trial, petitioner generally described several activities as follows:

> Well, go back to the several businesses that we were trying to conduct at the time. One is the business of renting houses, one is the business of incorporation, one is the business of buying and selling property. To get a second opinion or a good opinion--shall we buy this piece of property or not? If we buy it, shall we build a house on it? If we build a house on it, how much do we set aside?
>
> And we actually * * * bought pieces of property and we built solar houses on them. So that was one of the things, and testing further new inventions.

---

[6](...continued)
checks submitted by petitioner.

Another aspect of petitioner's activity related to two citizens'
activist groups he organized, and, as to which, some of the
expenses were claimed as trade or business expenses on
petitioners' 1991 income tax return.  In his testimony in
connection with a mailing list maintained for these activist
groups, petitioner testified:

> [We] hit them again and again and again for the
> American Energy Society and the American Energy
> Association.  And with those two organizations--
>
> THE COURT:  All right.  Now those organizations,
> were they corporations?
>
> THE WITNESS:  No, sir.  They were not
> incorporated.
>
> THE COURT:  What would they do, these two
> organizations * * *
>
> THE WITNESS:  One thing they did was form under
> that a citizens' action group.  The purpose of the
> citizens' action group was in cases like finding a
> lawbreaker, which we did, and bringing a lawbreaker
> into court, as we did.  And when the lawbreaker was
> found to be in defiance of court, then the court would
> order that the lawbreaker would pay us a fee.  It was
> known as a private attorney general.  So that was one
> of the things that we engaged in.
>
> THE COURT:  So it was sort of like a whistle
> blowing-like thing?
>
> THE WITNESS:  You've got the popular phrase for
> it, sir.

Aside from the various rental properties petitioners owned and as
to which petitioners properly reported their income and expenses
on Schedule E of their 1991 return, the record supports a finding

that petitioners were engaged in the following activities during 1991, which petitioner contends constituted a trade or business activity for purposes of section 162(a):  (1) The ownership and holding for sale or lease of a condominium in Manatee County, Florida (Florida condominium activity); (2) "lawyering" (legal activity); and (3) research, inventing and teaching in the field of solar energy (solar energy activity).[7]  Respondent contends that none of these activities rose to the level of a trade or business within the meaning of section 162, and, therefore, none of the expenses attributable thereto are deductible on Schedule C.

Section 162 allows a deduction for "Trade or Business Expenses", which are "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Sec. 162(a).[8]  The inquiry as to whether a taxpayer is carrying on a trade or business is dependent on the facts and circumstances of each case.  Commissioner v. Groetzinger, 480 U.S. 23, 36 (1987).

---

[7]  Petitioner asserted that he and Mrs. Thomason were engaged in "a number of activities" to make a profit during 1991. However, the Court is satisfied that the relevant deductions on Schedule C of their return pertain to only the three activities described.

[8]  Cash basis taxpayers must establish:  (1) That the expenses were paid; (2) that they were paid during the year in issue; (3) that they were paid in furtherance of a trade or business; and (4) that they were ordinary and necessary expenses of the trade or business.  Sec. 1.162-1, Income Tax Regs.

In McManus v. Commissioner, T.C. Memo. 1987-457, affd. without published opinion 865 F.2d 255 (4th Cir. 1988), the Court set forth three criteria that are generally accepted as indicative of carrying on a trade or business. First, the taxpayer must undertake an activity intending to make a profit. Second, the taxpayer must be regularly and actively involved in the activity. Third, the taxpayer's business operations must actually have commenced.

For purposes of clarity, the Court separately analyzes each of petitioners' three activities to determine which, if any, of these activities constituted a trade or business for purposes of section 162.

With respect to the first activity, petitioners' ownership and holding of a Florida condominium for sale or lease, petitioners purchased the Florida condominium in January 1991 at a foreclosure sale. Although petitioner admitted that he had neither sold nor rented the Florida condominium in 1991, he demonstrated that he had made a clear effort to sell or rent the condominium by placing several advertisements in a newspaper during 1991 offering the condominium for sale or lease. The Court is satisfied that petitioner intended to make a profit in this activity.

The Court, however, is not satisfied that the second criterion set forth in McManus v. Commissioner, supra, has been

met with respect to this condominium activity. Petitioner failed to show the Florida condo activity was conducted on a regular and continuous basis during 1991 or that he was engaged in the business of buying and selling real estate. McManus v. Commissioner, supra. The majority of the actions taken by petitioner with respect to the Florida condominium were, at best, occasional and intermittent. The record indicates that, during the year at issue, petitioner merely ran a series of advertisements in the Washington Post offering the Florida condominium for sale or lease. Petitioner and Mrs. Thompson visited the condominium only twice during 1991, once to purchase the property and once to meet with a potential purchaser or lessee of the property. During their second visit, petitioner and Mrs. Thomason stayed at the condominium and made minor repairs to the condominium. Petitioner testified that he and Mrs. Thomason spent a total of approximately 120 hours per week on their various activities. However, no oral testimony or documentary evidence was presented to show how much time they actually spent on the Florida condo activity during 1991. Furthermore, petitioner admitted that he and Mrs. Thomason spent a majority of their time during 1991 on their rental real estate activity (i.e., Maryland property).

On this record, the Court holds that petitioner has failed to establish that, during 1991, he was engaged in the trade or

business of buying and selling real estate, or that petitioner's Florida condo activity was conducted on a regular and continuous basis. McManus v. Commissioner, supra. Petitioner failed to satisfy his burden of proving that the Florida condo activity rose to the level of a trade or business within the meaning of section 162. Accordingly, petitioners are not entitled to deduct, under section 162, any expenses incurred in connection with the Florida condominium, which they claimed on Schedule C of their 1991 return. Respondent is sustained on this determination.

However, section 212 allows as a deduction all the ordinary and necessary expenses paid during the year for the production or collection of income, section 212(1), or for the management, conservation, or maintenance of property "held for the production of income", section 212(2). Section 167(a)(2) allows as a deduction a reasonable allowance for depreciation of property "held for the production of income." The phrase "held for the production of income" has the same meaning in section 212 and section 167. Mitchell v. Commissioner, 47 T.C. 120, 129 (1966). Expenses and depreciation may be deducted only if the property is held for production of income during the taxable year at issue. Meredith v. Commissioner, 65 T.C. 34, 41 (1975). Section 1.212-1(b), Income Tax Regs., provides:

ordinary and necessary expenses paid or incurred in the
management, conservation, or maintenance of a building
devoted to rental purposes are deductible notwithstanding
that there is actually no income therefrom in the taxable
year, and regardless of the manner in which or the purpose
for which the property in question was acquired. * * *

Furthermore, expenses paid or incurred in connection with investment property may be deductible under this regulation, "even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto." Sec. 1.212-1(b), Income Tax Regs. Whether property is held for the production of income is a question of fact to be determined from all the facts and circumstances. Johnson v. Commissioner, 59 T.C. 791 (1973), affd. 495 F.2d 1079 (6th Cir. 1974).

On this record, the Court is satisfied that petitioners held the Florida condominium during 1991 "for the production of income", within the meaning of section 212(1), and that some of the expenses incurred with respect thereto during 1991 were for "the management, conservation, or maintenance" of the Florida condominium, as provided in section 212(2). Petitioner and Mrs. Thomason purchased the Florida condominium for the purpose of making a profit on resale. They intended to lease the Florida condominium to derive income during the period in which they were unable to sell the property, and they incurred expenses to

prepare and maintain the property for such use. The Florida condominium was not used personally by petitioner and his wife.[9] They continuously advertised the property for sale or rent during 1991, and the reason that no income was produced by the property during year in question was a lack of fruitful response to petitioners' newspaper advertisements. The record reflects that the condominium was suitable for occupancy and available for sale or rent during the year at issue. The fact that the property realized no income during the year at issue is not determinative.

Having found that petitioners held the Florida condominium for the production of income within the meaning of section 212, it follows that their expenses for the management, conservation, or maintenance of property, such as taxes, utilities, maintenance fees, advertising, legal fees, and repairs are allowable for 1991.[10] Respondent contends that expenses attributable to the Florida condo activity were deducted by petitioners, and allowed, on Schedule E of their 1991 return. Therefore, respondent contends, the expenses were not properly deductible on Schedule

---

[9] Although petitioner and Mrs. Thomason stayed at the Florida condominium on one of their two visits during 1991, the Court does not view this as a personal use because the sole purpose of their visit was to meet with a prospective purchaser or lessee and to make minor repairs.

[10] There is no evidence in the record that petitioner and his wife claimed a deduction for depreciation on the Florida condominium in 1991.

C, and no further allowances for deductions should be allowed on Schedule E.

Upon a review of the entire record, this Court is satisfied that petitioners did not deduct, on Schedule E, expenses relative to their Florida condo activity. It is evident that petitioners deducted these amounts on Schedule C, although it is unclear as to exactly what amount of the Schedule C deductions is attributable to the Florida condo activity. The Court agrees that the Florida condo activity expenses would be properly deductible on Schedule E, rather than Schedule C, and that petitioners are entitled to deductions for such expenses, notwithstanding the erroneous categorization of these expenses on their return.

The Court must, therefore, determine the amount of petitioners' expenses attributable to the Florida condo activity. Petitioner asserts that the groups of canceled checks he introduced at trial included checks for expenses paid in relation to the Florida condo activity. Petitioner's testimony at trial with regard to these canceled checks was jumbled and evasive, at best. However, upon a detailed and exhaustive review of the canceled checks, the Court is satisfied from the record that petitioner did incur expenses in relation to the Florida condo activity in 1991, and some of these expenses can be identified by some of the checks. Accordingly, the Court finds that petitioner

and Mrs. Thomason incurred expenses of $3,592.66 in connection with the Florida condo activity during 1991. Those expenses are allowed as Schedule E deductions.

With respect to petitioner's travel expenses in relation to the Florida condo activity, which specifically include vehicle expenses, travel, and meals, section 274(d) overrides the so-called Cohan rule.[11] Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Under section 274(d), no deduction may be allowed for expenses incurred for travel on the basis of any approximation or the unsupported testimony of the taxpayer. Section 274(d) imposes stringent substantiation requirements to which each taxpayer must strictly adhere. Thus, that section specifically proscribes deductions for travel expenses in the absence of adequate records or sufficient evidence corroborating the taxpayer's own statement. Petitioners failed to present evidence to meet the requirements of section 274(d) with respect to the claimed deductions for vehicle expenses, travel, and meals

---

[11]    As a general rule, if the record provides sufficient evidence that the taxpayer has incurred a deductible expense, but the taxpayer is unable to substantiate adequately the amount of the deduction to which he or she is otherwise entitled, the Court may, in some situations, estimate the amount of such expense and allow a deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).

relating to the Florida condominium.  Therefore, petitioners are not allowed a deduction for these expenses.

As noted above, the Court holds that petitioners are entitled to deduct expenses attributable to the Florida condo activity, under section 212, in the total amount of $3,592.66 for 1991.  Further, the Court holds that petitioners are entitled to a deduction for depreciation, under section 167, in connection with the Florida condo activity for 1991.[12]

With respect to the activity petitioner engaged in, which he referred to at trial as "lawyering", respondent contends that petitioner's law practice in 1991 was limited to legal actions taken with respect to his rental real estate activity, such as the filing of lawsuits against tenants to recover unpaid rent or to evict, and appearances in court on behalf of his children. Respondent asserts further that petitioner had no paying clients in 1991 and derived no income from a law practice that year.

Petitioner's testimony on this subject was characteristically vague and indicated that he was somewhat

---

[12] The appropriate amount of such depreciation deduction is provided by statute, to be determined by the parties in a Rule 155 computation.  Petitioners' basis has been established at $1,950, and no evidence was adduced of any other capital expenditures that would increase the basis for depreciation purposes.  The Court has made a finding that the Florida condo constitutes residential rental property.  Therefore, the applicable depreciation method, recovery period, and convention shall be determined in accordance with the finding under sec. 168.

confused about the nature and extent of his legal activities in 1991. Petitioner occasionally appeared in court in connection with his rental real estate activity, as well as with respect to rental houses owned by his children (which he managed). Oftentimes, petitioner was required to file lawsuits against his tenants to recover delinquent rental payments or to evict a tenant. On this record, substantially all of petitioner's legal activities during 1991 were in connection with his rental real estate activity in Maryland. Additionally, the canceled checks submitted by petitioner showing payments of expenses he alleges were "legal activity" expenses were claimed by petitioner on Schedule E of the 1991 return (as part of his rental real estate activity expenses) and were allowed by respondent.[13]

Petitioner failed to present any evidence, other than his own fragmented and self-serving testimony, to show that he performed any legal activities other than those performed in connection with his rental real estate activity. No evidence was presented that would tend to show that petitioner was engaged in the trade or business of a law practice in 1991, within the meaning of section 162. Moreover, petitioner presented no evidence to show that he incurred expenses, carrying on legal activities in 1991, in excess of the amounts allowed as

---

[13] This indicates to the Court that petitioner, himself, considered his "legal activities" in 1991 to be a part of his rental real estate activity.

deductions by respondent on Schedule E.  Moreover, some of the checks introduced into evidence by petitioner were payments to an attorney for legal services to petitioner.  Petitioner, therefore, was not engaged in the practice of law during 1991.

With respect to petitioner's solar activity, there is no question that petitioner was actively engaged in this activity for several years and that the activity rose to the level of a trade or business for purposes of section 162(a).  The question, however, is whether this activity was conducted by petitioner individually or whether the activity was engaged in by a corporation.

In 1962 petitioner incorporated Thomason Solar Homes, Inc. (Thomason Solar), for the purpose of conducting all of his solar energy research and invention activities.  Respondent contends that the expenses attributable to petitioner's solar energy activity in 1991 are properly deductible on the corporate return of Thomason Solar, rather than on petitioner's individual return. Thomason Solar was still in existence throughout 1991 and the corporation filed a Form 1120, U.S. Corporation Income Tax Return, for that year.[14]  Thomason Solar reported income of $13.79 and deductions of $2,714.85 for 1991.

---

[14]  Petitioner testified that he had filed documents to dissolve Thomason Solar sometime during 1991 or 1992.  However, he later admitted that the Maryland Department of Taxation and Assessment records reflect that Thomason Solar was "forfeited" on Oct. 3, 1994, for failure to file a corporate tax return.

Petitioner's testimony was highly ambiguous with respect to both the activities of Thomason Solar and the existence of his own individual solar energy activities, if any, in 1991. Additionally, petitioner was wholly unresponsive to respondent's request for him to enlighten the Court as to his methods for differentiating between his corporate and noncorporate activities. The types of expenses that petitioner asserts are attributable to his solar energy activity in 1991 (i.e., canceled checks) fit within the parameters of the meagerly described purpose and activities of Thomason Solar.

Petitioner has failed to satisfy his burden of proving that he, individually, carried on any solar energy activities in 1991 in addition to or separate from those activities conducted through Thomason Solar. He further failed to prove that any of the expenses he alleges are attributable to his solar energy activity in 1991 were not properly deductible on the corporate return of Thomason Solar.

On this record, the Court is satisfied that the expenses petitioner alleges are attributable to his solar energy activity in 1991 would have been properly deductible on the corporate return of Thomason Solar, rather than on petitioners' individual return for 1991. Consequently, the Court holds that petitioners, as individuals, were not engaged in a solar activity as a trade or business during 1991.

In summation, petitioners were not engaged in a trade or business activity within the intent and meaning of section 162(a). Respondent is sustained on this issue. However, petitioners are entitled to a depreciation deduction and additional deductions of $3,592.66 as Schedule E deductions, under section 212(1) and (2), relating to their Florida condominium.

<u>Decision will be entered</u>

<u>under Rule 155.</u>